864 P.2d 149

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven Dean RANSOM, Defendant–Appellant.**

**No. 19370.**

Supreme Court of Idaho, Boise, January 1993 Term.

Nov. 22, 1993.

---

its discretion by imposing an excessive sentence, and assigns error to each of those rulings. For the reasons set forth below, we affirm.

## BACKGROUND AND PRIOR PROCEEDINGS

Alleged victim, C.D., then ten years of age, told her mother that Steven Dean Ransom, an employee of the bus company which transported her and other special education students to school, had fondled her genitals earlier in the day. Two days later, C.D. was interviewed at the CARES (Children at Risk Evaluation Services) unit of St. Luke's Regional Medical Center by pediatric nurse Julie Cantlon. This interview was videotaped ("CARES videotape"). During the course of the police investigation, two other girls, S.M., then eleven or twelve years of age, and H.K. also reported that Ransom had sexually abused them.

Ransom was charged by indictment with three counts of lewd conduct with a minor child: the first count against C.D., the second against S.M., and the third against H.K. Trial was originally scheduled for early December 1990, but Ransom moved for a continuance, which was granted; the trial was rescheduled for February 1991.

Some time before trial, Ransom filed a motion to sever the three counts for trial but later withdrew it. On the morning of trial, the prosecution moved to dismiss Count III because the prosecution doubted H.K.'s ability to testify and had been advised by H.K.'s therapist that it might be harmful for her to testify. The district court granted the State's motion to dismiss the third count and denied Ransom's motion to continue the trial.

S.M. and C.D. both testified at trial. C.D. testified that she had been touched on the outside of her clothing but denied that she had ever stated that Ransom had fondled her under her pants. These statements were contrary to statements she had made in the CARES videotape. The prosecution sought to introduce the CARES videotape over Ransom's objection. Concluding that the videotape complied with the

Alan E. Trimming, Ada County Public Defender, and Steven A. Botimer, Deputy Ada County Public Defender, Boise, for defendant-appellant; Steven A. Botimer, argued.

Hon. Larry EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent; Michael A. Henderson, argued.

BISTLINE, Judge.

Appellant, Steven Dean Ransom, appeals from convictions for unlawful lewd conduct (I.C. § 18–1508) with a minor under sixteen years of age and for sexual abuse of another child (I.C. § 18–1506). Ransom contends that: 1) the trial court should not have denied his motion for a continuance, 2) a videotaped interview with one of the victims should not have been admitted, 3) certain expert testimony should not have been admitted, and 4) the trial court abused

requirements of the residual hearsay exception in I.R.E. 803(24), the trial court overruled the objection.

In the course of her testimony, S.M. stated that she "thought it [the sexual abuse] was all just a dream." Defense counsel cross-examined S.M. relative to the "dream" reference. The prosecution examined Sally Morrisroe ("Morrisroe"), S.M.'s counselor; she testified that cognitive dissonance is a common phenomena among children who undergo unwanted sexual experiences.

The jury convicted Ransom for lewd conduct with C.D. and for the lesser included offense of sexual abuse of a child in regard to S.M. Before sentencing took place, Ransom requested a new trial on the grounds that S.M. had recanted her testimony and further that the trial court should have: 1) granted the continuance, 2) stricken C.D.'s testimony on the basis that she was incompetent to testify, and 3) excluded C.D.'s CARES videotape. Part of the evidence presented at the hearing relative to the motion for a new trial was testimony that S.M. had recanted her testimony in a family meeting; however, during the hearing on the motion for a new trial, S.M. retracted her recantation.

Ransom was sentenced to concurrent terms of seven to twenty-one years for lewd conduct and seven to fifteen years for sexual abuse. Pursuant to a later I.C.R. 35 motion, the court reduced the sentence for lewd conduct only ·to a term of seven to seventeen years, but did not reduce the sexual abuse sentence.

On appeal, Ransom raises the following issues:

I. Did the district court err in denying Ransom's motion for a continuance after the State moved to dismiss the charges concerning H.K.?

II. Was the videotaped interview of C.D. properly admitted under the residual hearsay exception, I.R.E. 803(24)?

III. Should Morrisroe's testimony have been admitted?

IV. Did the trial court err in finding C.D. competent to testify?

V. Did S.M.'s recantation of her trial testimony require granting of a new trial?

VI. Was Ransom's sentence excessive?

## ANALYSIS

I. *The Decision to Deny Ransom's Motion for a Continuance was not an Abuse of the Trial Court's Discretion.*

■ On the morning of trial, the prosecution moved to dismiss Count III. The attorney for the prosecution told the trial court that he had met with H.K. almost daily for eight days prior to the trial, that her condition had "deteriorated" over this period of time, and that on the day immediately prior to trial, she was so groggy that she was falling from her chair.[1] The prosecution added that H.K.'s counselor/therapist advised against H.K. testifying.

Ransom then moved to continue the trial, arguing that dismissal of Count III significantly changed his defense strategy. In particular, Ransom had planned a "conspiracy" defense, based on the fact that both S.M. and C.D. knew H.K. but did not know each other, and also on various inconsistencies in the statements made by S.M. and H.K.

The trial court granted the prosecution's motion to dismiss Count III and denied Ransom's motion for a continuance.

■ The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. *State v. Carman*, 114 Idaho 791, 793, 760 P.2d 1207, 1209 (1988). When an exercise of discretion is reviewed on appeal, the inquiry involves (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991) (*quoting*

1. The record does not disclose the reason for H.K.'s condition.

*State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989)).

Ransom concedes that the decision regarding a motion for a continuance lies within the discretion of the trial court, but argues that the trial court here abused this discretion, primarily because the dismissal of Count III on the morning of the trial gave Ransom no time to reformulate his defense strategy. Indeed, since the State's attorneys had interviewed H.K. almost daily for eight days, it is odd that they did not earlier decide that she would be ineffective as a witness.

In our appellate capacity, however, we are limited to evaluating the compliance of the trial court with the criteria that this Court outlined in *State v. Hedger*, 115 Idaho at 600, 768 P.2d at 1333. First, the trial court recognized that the decision was committed to its sound discretion. Second, the transcript reveals that the court clearly knew, and rightly so, that such discretion is not unfettered, and that its proper role relative to evaluating Ransom's motion for a continuance necessitated weighing the competing interests of the State and the defendant.

In particular, the court was concerned that granting the continuance would result in a significant delay of the trial. One of the State's expert witnesses, Dr. Richard Barnes, was an out-of-state physician who had performed the physical examination of C.D. At the time of Ransom's motion to continue the trial, Dr. Barnes was scheduled to testify three days hence. Rescheduling his testimony would delay the trial another three to six months. Coupled with the prior nine month time lapse between the indictment and the trial, the court was concerned about the effects of a further lengthy delay on both the memories and the emotional stability of the two remaining alleged victims, C.D. and S.M. S.M. had experienced extreme anxiety as a re-

sult of the first continuance and had mentioned suicide. The court also noted that both C.D. and S.M. were developmentally disabled and that delaying the trial might well result in not having either or both as witnesses for the prosecution.

The court also recognized and considered problems that denial of the motion for a continuance would occasion for Ransom. The court attempted to alleviate these problems by inviting Ransom to submit a motion in limine for greater flexibility in admitting H.K.'s hearsay statements. Such statements would be no more prejudicial to Ransom than if Count III were to remain in place. Since most of the inconsistencies in the girls' statements concerned their own encounters with Ransom, rather than joint encounters with him, the court arguably could have decided that dismissal of Count III and eliminating H.K. as a witness would not result in significant prejudice to Ransom's defense strategy.

In short, the trial court clearly focused on relevant reasons for either granting or denying the motion for a continuance. The particularly compelling facts and circumstances here presented lead to the conclusion that the trial court did not abuse its discretion in denying Ransom's motion.

## II. *The CARES Videotape was Properly Admitted.*

▮ Two days after the alleged sexual abuse, C.D. was interviewed at the CARES center. Ransom contends that the trial court could not have found the tape to be more probative than any other evidence, particularly C.D.'s live testimony at trial; accordingly he argues that admission of the videotaped interview violated I.R.E. 803(24).

I.R.E. 803(24) serves as a residual hearsay exception.[2] The admission of a hear-

---

2. **Rule 803. Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness.... (24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of

trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable means; and (C) the general purposes of these rules and the interests of

say statement under 803(24) by a trial court is a proper exercise of discretion only when the court finds that (A) the hearsay statement has circumstantial guarantees of trustworthiness equivalent to those in Rules 803(1) to 803(23), (B) the statement is offered as evidence of a material fact, (C) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, (D) the general purposes of the rules of evidence, and the interests of justice, will best be served by admission of the statement into evidence, and (E) the proponent gives the adverse party adequate notice and information regarding use of the statement. *State v. Giles,* 115 Idaho 984, 986–87, 772 P.2d 191, 193–94 (1989).

In deciding to affirm or deny a 803(24) ruling, we carefully review each of the trial court's findings. The trial court's ruling admitting such evidence will not be reversed on appeal absent a showing that the trial court abused its discretion. *Id.,* 115 Idaho at 986–87, 772 P.2d at 193–94 (citations omitted). In this case, the trial court clearly made the five obligatory findings under 803(24) before admitting the CARES videotape into evidence, all of which findings were supported by substantial, competent evidence.

First, the court recognized that the videotape was offered as evidence of a material fact, concerning what exactly occurred between C.D. and Ransom and how she had been touched.

Second, the trial court noted that Ransom had clearly received notice of the videotape, since Ransom's attorney had a copy of the videotape and sought to suppress it.

Third, the court determined that the CARES videotape had more probative value than C.D.'s live testimony. Ransom argues that the videotape could not be more probative than live testimony, simply because of the procedural safeguards in the

courtroom, including the presence of a jury and the fact that live testimony is subject to an oath and cross-examination. Taken to its logical conclusion, Ransom's argument would preclude admissibility of any hearsay statement under 803(24). Of course, Ransom's point, insofar as it reminds us that hearsay statements must be carefully examined in order to ascertain that their probative value is greater than that of other evidence on the point for which it offered, is well-taken. Because not all hearsay statements, and not all CARES videotapes, will meet the 803(24) test, the trial court's analysis will generally be confined to a case-by-case basis.

In this case, the court noted that C.D. was developmentally and emotionally disabled, that eleven and one-half months had passed between the CARES interview and the trial, that C.D. was "frightened," that she would "clam up," and that in testifying on the stand she only responded to leading questions. In contrast, C.D.'s statements during the CARES interview were "spontaneous and clear." We are not persuaded by Ransom's contention that this finding by the trial court was unsupported, particularly since the trial court had the opportunity to observe that C.D. had clearly experienced memory loss since the incident. For example, during her live testimony, she initially denied ever going to Ransom's house or telling anyone that she had been touched by Ransom inside her clothing.

The trial court decided that admission of the CARES videotape was in the best interests of justice. In *State v. Zimmerman,* 121 Idaho 971, 975, 829 P.2d 861, 865 (1992), we upheld the trial court's determination that the purposes of the rules of evidence and the best interests of justice were served by admitting hearsay statements that were made by a young child in a less "threatening" situation than the open courtroom. Here, the trial court made a decision based on the same rationale as in *Zimmerman,* stating that "[i]n terms of

justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hear-

ing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

the general purposes of the rule and interest of justice, I think using this type of tape is more reliable, [and] would probably give the jury a much better effort at looking at what the child says in a much more neutral, detached situation than this frightening [courtroom] experience." The court also noted C.D.'s developmental delay and the fact that she is at least two grade levels below other children her age. The logic of *Zimmerman* applies to this case.

Under the circumstances, the trial court was correct when it determined that the videotape had circumstantial guarantees of trustworthiness equivalent to those set out in the other hearsay exceptions of I.R.E. 803. The trial court relied heavily on the compliance of the CARES interviewer with the procedural safeguards that were first suggested in *State v. Wright*, 116 Idaho 382, 385, 775 P.2d 1224, 1227 (1989), noting that here the questions posed by the CARES interviewer were non-leading, that the interviewer did not know the specific allegations which C.D. had made, and that the session was videotaped. Although such procedures are not necessary for a finding of reliability, (*see, e.g., State v. Giles*, 115 Idaho 984, 987, 772 P.2d 191, 194 (1989)), the trial court had reason to conclude that the interview statements were reliable, and we affirm Judge Schwartzman's ruling admitting the CARES videotape into evidence.

### III. *The Trial Court Properly Allowed Expert Testimony About Abused Children.*

■ One of the State's witnesses was Sally Morrisroe, a counselor who had treated S.M. During her testimony, Morrisroe described how some children react to sexual abuse. She stated that children who have been sexually abused sometimes attempt to disassociate themselves from the experience and often refer to the abuse as being "like a dream."[3] At the same time, such children know that the abuse is real. Morrisroe also testified, without objection by the defendant, that it was her opinion that S.M. had been sexually abused. Morrisroe did not testify to her opinion as to whether or not S.M. was telling the truth, or whether allegations of sexual abuse by children are usually truthful or not.

Ransom does not challenge the admission of Morrisroe's opinion that S.M. was sexually abused. In *State v. Hester*, this Court specifically allowed such expert testimony. 114 Idaho 688, 693, 760 P.2d 27, 32 (1988). Ransom challenges the application of *Hester* as a springboard for the admission of expert testimony relative to the common reactions of children subjected to sexual abuse; his challenge is founded on the hypothesis that such testimony improperly invades the province of the jury, because it takes the issue of the alleged victim's credibility from the jury. Ransom argues that such admission is error sufficiently substantial to warrant a reversal of his conviction under Count II.

In *Hester*, the Court admitted expert testimony pursuant to I.R.E. 702[4] about matters "beyond common experience," if such testimony "assists the trier of fact." 114 Idaho at 693, 760 P.2d at 32. Without explanation, we stated that "the expert's function is to provide testimony on subjects that are beyond the common sense, experience, and education of the average juror . . . Certainly, the behavioral patterns of

---

**3.** During S.M.'s direct examination, the following took place:

Q: S., I don't know if you've thought about this, but if he'd [Ransom] been touching you, why did you go over to his house in that summer of 1989 and stay in his trailer?
A: Because I thought it was all just a dream.
Q: What did you think was a dream?
A: Everything.
Q: So this was something you were trying to forget?
A: Uh-huh.

Throughout her testimony, S.M. repeated her belief that the alleged touching and conduct had been a dream. She then testified that a "couple of days" after the contact with Ransom, she realized that it had not been a dream.

**4. Rule 702. Testimony by Experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

young victims of incest or child molestation fall into that category." *Hester*, 114 Idaho at 694, 760 P.2d at 33 (*quoting State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986)).

Although some behavioral patterns of child sexual abuse victims may not need expert explanation, we agree with the State that *the manner* in which abuse victims attempt to dissociate themselves from the abuse do need explanation, because this is "beyond common experience." Here, the expert testimony proffered by Morrisroe was intended to assist the jury in evaluating S.M.'s statements and behavior. It cannot be assumed that the average juror will be familiar with all of the behavioral characteristics of child molestation victims. Here, Morrisroe described why children may not immediately report the abuse, why such children often report that "it was like a dream," and why such children maintain contact with their abusers.

It is not unlikely that, absent expert assistance, jurors might mistake such behavior reactions for inaccuracy or fabrication. Hopefully, knowledge of common characteristics of sexually abused children gained from behavioral science research very well may aid a jury in weighing the testimony and determining the credibility of the alleged victim.

Where, however, experts are allowed to state opinions as to the witness's credibility, or to vouchsafe for the accuracy of a victim's spontaneous recollection, or inaccuracy thereof, such testimony might indeed usurp the jury's task of determining witness credibility. Testimony presented solely for jury education or clarification, however, does not impose upon a jury's fact-finding function.

Furthermore, Ransom cannot viably argue that Morrisroe's testimony constituted reversible error, where it appears that Dr. Roland Hart, a psychologist and expert witness for the defense, testified in cross examination by the prosecuting attorney to substantially the same behavioral patterns in sexually abused children, *without objection* by defense counsel.[5] In short, Morrisroe's testimony was properly admitted, and it was not unfairly prejudicial.

IV. *The Trial Court did not err in Denying Ransom's Motion for a New Trial.*

Ransom argues that the trial court erred in not granting his motion for a new trial. In addition to his claims for a new trial which we address above, Ransom contends that the interest of justice required the trial court to grant a new trial because C.D. was incompetent to testify, or alternatively, because S.M. recanted her testimony at a family meeting.

A. *The Trial Court's Decision that C.D. was Competent to Testify was not an Abuse of Discretion.*

I.R.E. 601 provides in part:

Every person is competent to be a witness except:

(a) Incompetency determined by court. Persons whom the court finds to be incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly.

■ This rule contemplates that the trial court has the discretion to determine witness competency. *See State v. Mader*, 113 Idaho 409, 410, 744 P.2d 137, 138 (Ct. App.1987). In this case, C.D. testified that she knew the difference between telling the truth and a lie and that she promised to tell the truth. Throughout her testimony, C.D. demonstrated her ability to understand and respond appropriately to questions about past events. The day before C.D. testified, in fact, Ransom moved to exclude any out-of-court statements made by C.D. or S.M. regarding the alleged

---

**5.** During Dr. Hart's cross-examination, he testified as follows:

 Q: ... [I]t's not uncommon, is it, Doctor, for victims of child abuse to kind of detach from the abuse itself and oftentimes perceive that it was a dream.

 A: That's a possible reaction.
 Q: Fairly common, in fact, isn't it, Doctor?
 A: Yes.

abuse, arguing that the girls were capable of testifying under I.R.E. 601 and 603.[6]

Ransom only objected to C.D.'s testimony after Dr. John Burns, a pediatrician and child psychiatrist, had testified. Based on his review of a discharge summary prepared by Primary Children's Hospital in Salt Lake City in 1988, Dr. Burns testified that C.D. suffered from pervasive developmental disorder and post-traumatic stress disorder ("PTSD"). Dr. Burns testified that children with pervasive developmental disorder often undergo periods of being "out of contact with reality." Such persons may also experience delusions. Dr. Burns also testified that persons afflicted with both PTSD and pervasive developmental disorder suffer a "massive insult" to their psychology and, when confronted with a situation similar to the one that initially traumatized the person, may suffer thought disorganization, delusions, or hallucinations. However, as to C.D., Dr. Burns did not testify that she was unable to distinguish reality from nonreality at the time of either the alleged abuse by Ransom or at the time of trial, or that C.D. was "incapable of receiving just impressions from the facts" or that she could not relate the facts "truly," the standards established by I.R.E. 601.

The trial court heard Dr. Burns's testimony, but denied Ransom's motion to strike C.D.'s testimony, primarily because Dr. Burns had never examined C.D. himself. Ransom later moved for a mistrial on the basis of the court's denial of the motion to strike; the trial court denied it, concluding that the weight and credibility to be accorded to C.D.'s testimony was a matter for the jury. Later, Ransom moved for a new trial. During the hearing on the new trial motion, the trial court stated:

[c]ertainly her competency as a witness was not raised at the time it was presented and even if it were, the Court again within its discretion would clearly have found her competent to testify in terms of her chronological age and her understanding of the obligation to tell the truth, of her mental capacities at the time of the occurrence, of her memory and her capacity to retain an independent recollection and to express it in words, and her memory of the occurrence and her capacity to understand simple questions, and her abilities to perceive, to recollect or communicate were sufficient for her to come forward and testify as a witness.

Idaho Criminal Rule 34, New Trial, states in part: "The court on motion of a defendant may grant a new trial to him if required in the interest of justice." In *State v. Lankford*, 116 Idaho 860, 873, 781 P.2d 197, 210 (1989), this Court said that the decision of whether to grant a new trial is a discretionary matter for the trial judge, and it will not be disturbed absent an abuse of that discretion. In the case at bar, the trial court heard C.D. promise to tell the truth and answer many questions about past events. The court, although it heard Dr. Burns's testimony, was not persuaded that C.D. was incompetent to testify as a witness. We cannot say that this decision constituted an abuse of the court's discretion.

B. *The Trial Court was Correct in Denying Ransom's Motion for a New Trial Based on S.M.'s Recantation.*

■ About three weeks after the trial, S.M. engaged in a lengthy "family council," with her father, her grandmother, and her aunt. S.M.'s aunt is the mother of defendant Ransom. At the end of this council, S.M. recanted her trial testimony. Tracy Payne, a friend of S.M., testified that the day after the family meeting, she heard S.M., coaxed by Chris Ransom, the defendant's brother, say that she had lied in court.

At the hearing for a new trial, S.M. testified that at the council, she was pressured by her aunt to say that the sexual abuse had not occurred. She stated that her aunt told her that she, S.M., was unwanted, that she was breaking up the family, and that

6. Ransom's argument is further weakened by his assertion in Part II, above, that C.D.'s live testimony was more probative than her statements in the CARES videotape.

this hurt S.M.'s feelings. S.M. testified that she was afraid of her aunt, and that the recantation was false and that she knew the abuse had occurred. Marian Ransom, the defendant's mother, testified that the purpose of the meeting was S.M.'s spiritual salvation. The trial court found that S.M. had been coerced into recanting her trial testimony, and that under either the *Larrison* test or the test for newly-discovered evidence, a new trial was not warranted.

This Court adopted the *Larrison* test which was utilized in *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1986), where we said that a new trial should be held based on recanted testimony if the defendant (1) submits an affidavit by a government witness in which the witness recants his or her testimony, specifies in what ways he or she dishonestly testified, and in what ways, if given the opportunity, he or she would testify differently, and (2) makes a showing that such changed testimony may be material to a finding of the defendant's guilt or innocence. *Scroggins,* 110 Idaho at 385, 716 P.2d at 1156–57; *State v. Lankford,* 116 Idaho 860, 874, 781 P.2d 197, 211 (1989). In this case, however, the *Larrison* test is inapplicable, since S.M. retracted her recantation. As the trial court recognized, the more appropriate analysis falls under the rubric of newly-discovered evidence.

When a witness's recantation results in newly-discovered evidence, the standard for obtaining a second trial is rigorous, possibly to encourage the parties to gather their evidence for the first trial. *State v. Lankford,* 116 Idaho at 874, 781 P.2d at 211. A motion based on newly-discovered evidence must disclose (1) that the evidence is newly discovered and was unknown to the defendant, (2) that the evidence is material, not merely cumulative or impeaching, (3) that it will probably produce an acquittal, and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *State v. Drapeau,* 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

At the motion for a new trial, S.M. retracted her recantation and testified that she would testify at a new trial as she did at the first trial. Thus, her recantation at the family council would serve as a prior inconsistent statement for the purpose of impeaching her testimony. The trial court noted that since other evidence at trial suggested that S.M. had made other inconsistent statements, the statement at the family council was cumulative. Furthermore, the trial court gravely doubted the reliability and truthfulness of the recantation; the court therefore concluded that the statement would not serve to produce a different result. Given the highly questionable nature of the circumstances surrounding S.M.'s recantation, we cannot say that the court abused its discretion in denying Ransom's motion for a new trial.

## V. *Ransom's sentence was not excessive.*

The court below originally imposed on Count I a twenty-one year indeterminate sentence with the first seven years fixed. On Count II, the court imposed a fifteen year sentence with the first seven years fixed. Following a Rule 35 motion, the court reduced the sentence for Count I to seventeen years with the first seven years fixed. Ransom contends that this modified sentence is excessive.

Sentencing is a discretionary function of the trial court. *State v. Broadhead,* 120 Idaho 141, 144, 814 P.2d 401, 404 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 394, 825 P.2d 482, 491 (1992). For purposes of appellate review, the fixed term of a sentence imposed under the Uniform Sentencing Act is the term of confinement. *Id.,* 120 Idaho at 146, 814 P.2d at 406 (citations omitted). A sentence that falls within the statutory maximum is legal, leaving the defendant with the burden to prove that the sentence is unreasonable and thus an abuse of discretion. *Id.,* 120 Idaho at 144–45, 814 P.2d at 404–05. Where reasonable minds could differ as to the sufficiency of the time for confinement, the discretion vested in the

trial court will be respected. *Id.*, 120 Idaho at 145, 814 P.2d at 405 (citation omitted).

 To protect the interests of the defendant who faces incarceration, the trial court must comply with the weighty responsibility which was adopted in *Broadhead.* The court must consider the protection of society, deterrence of this defendant and others, the possibility of rehabilitation, and punishment of the defendant. *Broadhead,* 120 Idaho at 146, 814 P.2d at 406. Additionally, where a sentence is alleged to be excessive, the appellate court will make an independent examination of the record, having regard to the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Shideler,* 103 Idaho 593, 594, 651 P.2d 527, 528 (1982).

Here, the sentences of seven years were well within the confines of the statutory maximum of fifteen years for sexual abuse and life imprisonment for lewd conduct. *See,* I.C. §§ 18–1506, 18–1508. We thus turn to the inquiry of whether Ransom's sentences are unreasonable.

Ransom calls to our attention the fact that he has no prior criminal record and that he was honorably discharged from the Air Force in 1980. Moreover, he argues that a monitored supervised probation with the condition of no contact with children under eighteen would have met the trial court's concern about the protection of society, even though the trial court felt that its only option was imprisonment. Ransom further argues that probation would have also furthered the goals of rehabilitation and deterrence because Ransom could be ordered to participate in extensive therapy while on probation, an option not apparently available in prison. Ransom does not argue how this alternative would meet the goal of punishment.

Nonetheless, our careful review of the record compels us to conclude that the district court could have reasonably decided that the sentences imposed on Ransom were appropriate. The trial court complied with the careful and deliberate analysis which we required in *Broadhead.* Here, the trial court was particularly concerned with the protection of society, particularly its young, disabled and consequently most vulnerable members, and with deterring similar conduct in the future. The court based its conclusion on a reasonable view of the facts when it found that Ransom had used his position as a school bus driver familiar with developmentally disabled children to "groom them and to pursue them and to eventually under the guise of helping them to take certain sexual liberties with very vulnerable young ladies who are not able to defend themselves."

As for rehabilitation, the court noted that Ransom's treating physician submitted a psychological report as part of the presentence investigation, which stated that:

> Steve's denial of sexual conduct can be attributed to the denial associated with sexual addiction. When an offender denies the offenses which he in fact has committed, this is a serious symptom which indicates the person is not a good candidate for treatment. In fact, the treatment of choice is jail. Since the person has not admitted a problem, then it is not possible for effective treatment to take place under these conditions.

In light of the above passage, and all of the other information brought forth at trial, we hold that the seven-year term of confinement was reasonable and that the trial court properly exercised its discretion.

The judgment of the court below is affirmed.

McDEVITT, C.J., JOHNSON and TROUT, JJ., and REINHARDT, J. Pro Tem., concur.