**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43108**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 608** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: July 18, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **DAVID GEORGE HEROD,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

Judgment of conviction and concurrent unified sentences of twenty-five years, with a minimum period of confinement of seven years, for two counts of lewd and lascivious contact with a child under the age of sixteen, <u>affirmed</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

David George Herod was convicted of two counts of felony lewd conduct with a minor under sixteen years of age, Idaho Code § 18-1508. Herod received two unified sentences of twenty-five years, with a minimum period of confinement of seven years, to run concurrently. Herod asserts the district court erred during his trial when it allowed certain testimony to be admitted by the State. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

This case stems from charges that Herod committed lewd and lascivious acts upon T.W., a ten-year-old girl, and A.M., a nine-year-old girl. T.W. and A.M. were friends with Herod's two daughters. T.W. testified at trial to events that occurred during three separate sleepovers with Herod's eldest daughter at Herod's house. During the first instance, T.W., Herod's eldest

1

daughter, and Herod slept on the couch in the living room and T.W. awoke to Herod touching her nipples. At a second sleepover, T.W. again slept on the couch with Herod's eldest daughter and Herod. During the night, Herod pulled T.W. closer to him and she awoke to him touching her vagina. When she moved away, Herod started crying and told T.W. not to tell anyone and that it would not happen again. Finally, in the morning after a third sleepover, Herod pulled T.W. closer to him on the couch, put a blanket over her, grabbed her hand and put it on his penis, and instructed T.W. to move her hand "toward the bottom." T.W. pulled her hand away and went home. T.W. disclosed the incidents to her mother, who called the police. T.W. was taken to the Nampa Family Justice Center for a forensic interview.

A.M. also testified at trial that she had sleepovers with Herod's daughters at Herod's house on multiple occasions. A.M. testified at trial to events that occurred during two separate sleepovers. At one sleepover, A.M. slept on the couch in the living room with Herod's daughters and Herod. During the night, A.M. awoke to Herod touching her vagina and heavily breathing. Herod pulled A.M.'s hand toward his pants, but A.M. pulled her hand back and moved to a different section of the couch. At another sleepover, A.M. slept in a tent in the backyard with Herod's youngest daughter, Herod's son, and Herod. A.M. awoke to Herod crying and he told her, "Sorry. I don't know why I did that." Herod then tried to touch her with an object that made a "buzzing" sound. A.M. told her parents about the incidents after hearing that T.W. had come forward. A.M. underwent a forensic interview and physical exam at the Nampa Family Justice Center.

At trial, the State called a pediatric nurse practitioner who specialized in child sexual abuse as an expert witness. The expert gave a general description of how forensic interviews of potential child sexual abuse victims are conducted. Further, the expert testified about factors deemed important in assessing a child's statements about sexual abuse to include: the amount of detail a child can give; the consistency of the statements made on separate occasions; a child's developmentally inappropriate sexual knowledge; a child's body language; and the words a child uses to describe the abuse. The expert's testimony also explained delayed disclosure, how common it is in children, and how delayed disclosure can affect a forensic interview of a child sexual abuse victim.

During the direct examination of the expert, the State asked what factors the expert considered when determining if a child's disclosure is a false allegation. The expert gave the following answer:

> We look at how much detail the child can give. If they're not able to give any detail, well, he did this and that's it, you know, you start to question. You know, they're asked well, you know, how were your clothes? What were you wearing? If they're not able to give any type of detail about how it may have felt or what they heard or saw or anything like that, you start to question a little bit.
> Now, if they're able to give a lot of detail, well, they were wearing this, this, and this, I was wearing this, you know, it felt like . . . .

Herod's counsel objected, stating the line of questioning asked the witness to discuss the credibility of the person, and credibility issues were in the province of the jury. The district court overruled the objection, and stated: "Obviously you're going to be going with a series of questions, so I'm not preventing [defense counsel] from objecting again if he feels it gets afield of . . . we all know that there's a sort of fine line you can follow . . . ." The State continued its examination, and the expert testified as to the content of A.M.'s forensic interview. Defense counsel had no further objections.

The jury convicted Herod of two counts of felony lewd conduct with a minor under sixteen years of age. On each count, the district court imposed a unified sentence of twenty-five years, with seven years determinate, to be served concurrently. Herod timely appeals.

## II.

## STANDARD OF REVIEW

A district court's decision to allow expert testimony is within the discretion of the district court and will not be set aside absent a showing of an abuse of discretion. *State v. Varie*, 135 Idaho 848, 853, 26 P.3d 31, 36 (2001). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

# III.

# ANALYSIS

## A. Expert Testimony

Herod argues the district court abused its discretion when it allowed the expert's testimony because the testimony improperly invaded the province of the jury. Specifically, Herod contends the expert's testimony indirectly vouched for the credibility of the victims, and credibility is an issue for the jury. The State argues the testimony merely provided assistance to the jury in evaluating the victims' disclosures and statements regarding sexual abuse.

Idaho Rule of Evidence 702 provides that testimony of qualified expert witnesses may be admitted if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Therefore, after the court qualifies a witness as an expert, it "must determine whether such expert opinion testimony will assist the trier of fact in understanding the evidence." *State v. Pearce*, 146 Idaho 241, 246, 192 P.3d 1065, 1070 (2008). Where the normal experience and qualification of lay jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are inadmissible. *State v. Hester*, 114 Idaho 688, 696, 760 P.2d 27, 35 (1988). However, we have routinely held that "an expert's opinion, in a proper case, is admissible up to the point where an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. To venture beyond that point, however, is to usurp the jury's function." *State v. Perry*, 139 Idaho 520, 525, 81 P.3d 1230, 1235 (2003); *Hester*, 114 Idaho at 696, 760 P.2d at 35.

Expert testimony regarding traits typically exhibited by child sexual abuse victims is admissible. *Hester*, 114 Idaho at 694, 760 P.2d at 33 (holding expert testimony regarding characteristics typically exhibited by child abuse victims is admissible because this type of evidence goes beyond the common experience of most jurors, and jurors would be assisted by such expert testimony); *see State v. Blackstead*, 126 Idaho 14, 22, 878 P.2d 188, 196 (1994) (reasoning there is a "distinction between testimony that merely opines as to the victim's credibility and testimony which corroborates elements of the victim's story or aids the jury in evaluating the victim's truthfulness"). In *State v. Ransom*, 124 Idaho 703, 864 P.2d 149 (1993), the alleged victim testified that the sexual abuse was like a dream. *Id.* at 709, 864 P.2d at 155. The expert witness testified as to the language children use when describing sexual abuse;

specifically explaining why children typically describe sexual abuse "like a dream," even when they know the abuse is real. *Id*. The expert witness then testified her ultimate diagnosis was that the alleged victim had been sexually abused. *Id*. The court reasoned the expert's testimony was intended to assist the jury in evaluating the victims' statements. *Id.* at 710, 864 P.2d at 156. The court further noted because the average juror was unlikely to be familiar with all of the behavioral characteristics of child molestation victims, absent expert testimony, jurors might mistake such behavior reactions for inaccuracy or fabrication. *Id.* Further, the court held the expert witness testimony presented solely for jury education or clarification does not impose upon a jury's fact-finding function. *Id*.

Similarly, the expert witness in this case was educating the jury regarding the language children use in describing sexual abuse and explaining how she analyzes the language expressed by an alleged victim in deciding what, if any, diagnosis to make. First, the expert testified to the factors she uses in evaluating the statements of child victims: how much detail a child gives; whether the child's statement is identical every time; whether the child has developmentally inappropriate sexual knowledge; and what words the child uses to describe the events. Second, the expert testified she observed A.M.'s forensic interview and explained the contents of that interview. Finally, while the expert testified that "sexual abuse should strongly be considered" as a diagnosis, the expert never specifically applied the factors she considered to A.M.'s interview, nor did she comment on either the credibility of A.M. or T.W.

Although making a diagnosis of potential sexual abuse necessarily involves the diagnostician assessing a child's truthfulness, that does not mean, in this case, the diagnostician's testimony vouches for the victims' truthfulness; otherwise, a diagnosis of sexual abuse would not be admissible. *See Hester*, 114 Idaho at 692, 760 P.2d at 31 (an expert can render an opinion that a child has been sexually abused if he is qualified by knowledge, skill, experience, training, or education); *see also State v. Lewis*, 123 Idaho 336, 351, 848 P.2d 394, 409 (1993). Here, the expert never opined about A.M.'s or T.W.'s credibility, but only provided factors by which the jury could itself determine their credibility. The expert testimony admitted in this case is like the admitted expert testimony in *Ransom* and we find no error in admitting it.

## B. Harmless Error

The State argues even if the district court erred in admitting the expert's testimony, such error was harmless because the jury was already free to consider the amount of detail provided

by witnesses in assessing their credibility. Conversely, Herod argues the district court's error was not harmless beyond a reasonable doubt because the credibility of the complaining witnesses was central to his case, and the expert's testimony created the risk that the jury would find the witnesses credible due to the expert's opinion instead of by its own determination.

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). An improper evidentiary ruling may be deemed to be harmless if the error does not affect a substantial right of the defendant. *State v. Parker*, 157 Idaho 132, 139-140, 334 P.3d 806, 813-814 (2014). In such a case, the burden is on the State to prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010).

The record shows beyond a reasonable doubt that even if the expert's testimony was not admitted, the jury would still have found Herod guilty. The purpose of the expert's testimony was to provide information to the jury about general characteristics and behaviors of child sexual abuse victims. The expert never directly analyzed how the witnesses' testimonies compared to the general characteristics and behaviors previously described. Furthermore, defense counsel did not object when other expert witness testimony provided the jury with similar explanations of forensic interviews and sexual abuse victim characteristics. A detective gave a general overview of types of questions asked in forensic interviews and explained how forensic interviewers are trained to elicit the most truthful response from child sexual abuse victims. A counselor who works with child sexual abuse victims, described what factors indicate a sexual abuse allegation is false, including how much detail the child can give, the use of developmentally appropriate sexual knowledge, and the consistency of a child's story. Given that testimony, the jury was presented with general information about forensic interviews and what experts look for to determine whether an allegation is truthful or not, as well as specific testimony about how the forensic interviews were conducted in this case and those findings. Thus, the jury heard substantially the same testimony from other witnesses and ultimately had to determine whether or not to believe T.W. and A.M.'s testimony. As such, even if the district court erred in admitting the expert's testimony, it was harmless error.

**IV.**

**CONCLUSION**

The district court properly admitted the expert's testimony on the factors considered when determining whether a child sexual abuse allegation is false because it aided the jury in evaluating the witnesses' testimony. Even if the district court erred in admitting the expert's testimony, the error was harmless. Therefore, Herod's judgment of conviction is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.