899 P.2d 416

**STATE of Idaho, Plaintiff,**

v.

**Donnel "Bud" STRADLEY, Defendant.**

**Mike WOOD, Real Party in Interest, Appellant,**

v.

**Hon. James J. MAY, District Judge, Fifth Judicial District, State of Idaho, Real Party in Interest, Respondent.**

No. 20483.

Supreme Court of Idaho, Boise, November 1994 Term.

June 21, 1995.

Rehearing Denied June 21, 1995.

Rolf M. Kehne, Boise, for appellant.

Larry EchoHawk, Idaho Atty. Gen.; Steven F. Scanlin, Deputy Atty. Gen., Boise, for respondent. Steven F. Scanlin argued.

TROUT, Justice.

This appeal arises from a failure to comply with a discovery request and the subsequent sanctioning of this conduct. The trial judge imposed a monetary sanction of $1,781 against the public defender which was to be paid personally, and not out of the county public defender's budget. At the sanction hearing, the public defender raised several objections to the sanction which were rejected by the trial court and from which he now appeals.

## I.

## BACKGROUND

Michael J. Wood (Wood), a public defender, represented Donnel "Bud" Stradley on a first-degree murder charge in which the state sought the death penalty. On February 10, 1992, the Twin Falls County Prosecutor filed a written discovery request which requested Wood:

2. To provide the prosecutor's office with copies of any results or reports of physical or mental examinations and scientific tests or experiments made in connection with this case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to testimony of the witness.

On September 29, 1992, during a hearing on a motion to suppress certain evidence, the trial judge determined that Wood had not fully complied with the prosecutor's discovery request. At this hearing the prosecution moved to compel discovery and the trial judge directed Wood to provide all undisclosed reports or tests.

At trial, Wood still had not produced all tests requested by the prosecution and the prosecution therefore moved, on December 2, to exclude the defense witness who had administered the test, Dr. Hamilton. The test in question was the Woodcock–Johnson test which has two separate sections, one involving language ability and the other representing mathematical achievement. Although the defense conducted and turned over the mathematical portion of the Woodcock–Johnson test in a timely manner, it failed to do so with the language portion of that test.

In response to the prosecution's request, Wood argued that he had not disclosed the language portion of the Woodcock–Johnson test because he felt to do so would violate Stradley's Fifth Amendment rights. The trial judge refused to exclude the test results and ruled that, although I.C.R. 16(j) [1] allowed him to exclude the witness, Stradley's right to a fair trial outweighed any consideration of excluding the witness. At the time the results were disclosed during trial, the judge stated that he thought his discovery order had not been complied with, and that this would be an appropriate case for imposing sanctions. The judge gave the defense counsel an opportunity to respond by a motion to reconsider his ruling, but he ultimately concluded that sanctions were appropriate. The trial judge postponed imposing a sanction until a sanction hearing could be scheduled after trial.

1. I.C.R. 16(j) states:
 Orders for discovery. If a party has failed to comply with a request for discovery under this rule, the court upon motion of a party, may, order a party to permit the discovery or inspection, prohibit the discovery of part or all of the information, evidence or material sought to be discovered, or enter such other order as it deems just in the circumstances. An order of the court granting discovery under this rule shall specify the time, place and manner of making the discovery and inspection permitted and prescribe such terms and conditions as are just.

After the ruling on the Woodcock–Johnson test, but prior to the sanction hearing, it was discovered that Dr. Hamilton had conducted a new Minnesota Multiphasic Personality Inventory (MMPI) test during the trial. Although the test was conducted on Sunday, November 29, the defense did not inform the prosecution of the re-testing until Wednesday, December 2. The prosecution thereafter spent the evening of December 2 analyzing the results of the Woodcock–Johnson test, and the new MMPI test, with their expert, Dr. Beaver. That night Dr. Beaver informed the prosecution that interpretive results from the MMPI were missing. The prosecution demanded the results, but only received access to the report after cross-examination of Dr. Hamilton had begun. The record below indicates that Wood was sanctioned only for the failure to disclose the language portion of the Woodcock–Johnson test, and not for the failure to disclose the subsequently administered MMPI test and interpretive report.

Following the trial, the judge held a sanction hearing at which Wood offered further arguments. In addition to his Fifth Amendment argument, Wood asserted: 1) he had been denied due process; 2) the sanction was punitive rather than restitutionary; 3) the sanction amount was not supported by the record; and 4) the sanction would have a chilling effect upon the defense of the indigent. Subsequently, in his written objection to sanctions, Wood further argued that: 1) there had been no discovery violation; and 2) there was no authority for the imposition of monetary sanctions against an individual attorney. The prosecution testified at the sanction hearing that additional work had been necessary in order to react to the late disclosure of the test results.

After listening to both sides, the judge entered an order providing for a sanction in the sum of $1,781, which was to be paid by the public defender and not by the county taxpayers. In the course of making that ruling, the judge also outlined a course of conduct by the public defender which he felt indicated that Wood's conduct in refusing to turn over the test results was purely intentional and not due to any inadvertence or mistake. The trial judge believed all this behavior pointed to a deliberate violation of the discovery rule and court order.

The amount imposed by the judge was apparently related to the bill submitted by Dr. Beaver for his services on December 2 and 3. The prosecution submitted this bill as the amount necessary to compensate for the time spent assessing the belatedly disclosed tests. The judge ordered the money paid into the district court fund.

## II.

### ISSUES

The appellant presents the following issues for our determination on appeal:

(1) Whether there was a violation of I.C.R. 16 relating to discovery.

(2) Whether the public defender received sufficient notice and opportunity to be heard in order to satisfy the requirements of due process.

(3) Whether the sanction was punitive rather than restitutionary, requiring that it be handled as a contempt case rather than as a sanction for a discovery violation.

(4) Whether the trial judge correctly interpreted I.C.R. 16(g) as authorizing a sanction against the public defender personally, rather than requiring payment from the public defender's fund.

(5) Whether the trial judge abused his discretion when imposing the sanction.

(6) Whether the sanction was actually void because of the chilling effect it would have on the defense of indigent clients by public defenders if they felt they might be subject to this type of assessment.

(7) Whether costs and attorney fees should be awarded on appeal.

## III.

### STANDARD OF REVIEW

An analysis of the trial court's actions requires an overview of the standards of review associated with the imposition of sanctions. While we conduct a review of the record to determine if the finding of the trial court that there was a discovery violation is

supported by substantial and competent evidence, we review the actual sanction imposed under the abuse of discretion standard. *Cf. Matter of Williams*, 120 Idaho 473, 476, 817 P.2d 139, 142 (1991) (citing *Marks v. Vehlow*, 105 Idaho 560, 671 P.2d 473 (1983) and *Mathison v. Felton*, 90 Idaho 87, 408 P.2d 457 (1965)). "What sanction should be imposed or whether a sanction would be imposed at all is discretionary with the trial court." *State v. Buss*, 98 Idaho 173, 174, 560 P.2d 495, 496 (1977). "[T]he trial court's exercise of that discretion is beyond the purview of a reviewing court unless it has been clearly abused." *Id.* When an exercise of discretion is reviewed on appeal, we apply a three-pronged test. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). First, we ask whether the lower court correctly perceived the issue as one of discretion; next, we determine whether the trial court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and finally, we ask whether the trial court reached its decision by an exercise of reason. *Id.*

## IV.

### THERE WAS A DISCOVERY VIOLATION

In the course of determining whether the trial court abused its discretion in imposing a sanction for a discovery violation, we must first determine whether a discovery violation occurred. The public defender sets forth numerous arguments claiming that no discovery violation took place. First, Wood argues that he was never sure he would call Dr. Hamilton as a witness, and therefore the Woodcock–Johnson test was not evidence prepared by a witness whom the defendant intended to call at trial and he had no duty to disclose this information under I.C.R. 16(c)(2).[2]

We do not find this argument persuasive because Dr. Hamilton was disclosed as a witness on Wood's witness list. The prosecution had submitted its request for discovery, and it included a request for any reports or tests prepared by a witness the defendant intended to call at trial. If we were to read the rule as Wood suggests, no reports or tests would be discoverable until after a witness is actually called. The control of the timing of discovery would be entirely at the discretion of counsel. Our rules contemplate that counsel must make a good faith determination of the witnesses to be called and do so at a time when meaningful discovery can be conducted. Wood's proposed interpretation would render I.C.R. 16(c)(2) meaningless and we decline to do so.

Wood further argues that the language portion of the Woodcock–Johnson test did not relate to the testimony of Dr. Hamilton, and that Dr. Hamilton only relied on the mathematical portion of the test which was turned over to the prosecution in a timely fashion. Wood refers us to the testimony of Dr. Hamilton and argues that it supports his claim that Dr. Hamilton did not rely on the undisclosed testing. However, the portion of testimony that Wood refers us to does not support his argument. At trial, Wood asked Dr. Hamilton: "[d]id you utilize the first round of MMPI and Milan tests and the second round of MMPI and Milan tests to form your opinions that you have expressed in this courtroom?" To that Dr. Hamilton replied: "[t]he opinions that I have expressed so far are based on the first MMPI and Milan." Although this could be interpreted to mean these were the only tests upon which he based his entire testimony, we find in reading the whole transcript that it is clear that Dr. Hamilton did not base his entire testimony on these two tests, and in fact was only distinguishing between the use of the first set of MMPI and Milan tests and the subsequently administered tests.

**2.** I.C.R. 16(c)(2) requires:
Upon written request of the prosecuting attorney, the defendant shall permit the state to inspect ... any results or reports of ... mental examinations ... made in connection with the particular case ... which the defendant intends to introduce in evidence at the trial, *or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to testimony of the witness.* (emphasis added).

■ As further support for this argument, Wood attempts to separate the Woodcock–Johnson test into two separate tests, and asserts that the language test was not relied upon by Dr. Hamilton. The prosecution's discovery request was made for all scientific tests given and interpreted. Although Wood is now contending that the language and mathematical portions are actually two separate tests, he failed to make this objection at trial. Indeed, at trial the only argument made by Wood was that the failure to turn over the language section was inadvertent, and that Dr. Hamilton must be allowed to testify regarding the Woodcock–Johnson test "otherwise we will not be able to give a full picture of the defendant's mental state." During this discussion Wood never asserted that the language portion of the test was not discoverable, rather he argued that the failure to comply with the discovery request was not intentional. Having failed to present the issue at trial, we decline to address it on appeal. *Dunn v. Baugh*, 95 Idaho 236, 238, 506 P.2d 463, 465 (1973) (citing *Williams v. Havens*, 92 Idaho 439, 444 P.2d 132 (1968); *Frasier v. Carter*, 92 Idaho 79, 437 P.2d 32 (1968); *Swaringen v. Swanstrom*, 67 Idaho 245, 175 P.2d 692 (1946)).

■ Next, Wood claims that the test was a statement of the defendant which was privileged until Dr. Hamilton took the stand. While Wood may have made this Fifth Amendment argument earlier, the record only indicates that he made it for the first time when the trial judge sanctioned him. The record also does not reflect that Wood ever objected to the discovery request or moved for a protective order. Even during trial, Wood interposed no objection to the use of Stradley's test results, and in fact utilized those results in his defense. Thus any objection to the disclosure of that test result made at the sanction hearing, clearly was not timely and it was not error for the district judge to disregard that argument in determining the propriety of sanctions.

■ Wood also argues that the discovery rules impose a "duty to mitigate" on each party, and that the prosecution failed to mitigate when it did not continue to ask Wood for the undisclosed portion of the test. We do not agree. I.C.R. 16(j) expressly imposes a duty on each party to turn over requested discovery items, and provides for the imposition of sanctions upon the failure to comply with this duty. It is clear by reading the rule that the duty was placed on Wood to disclose the information after the discovery request and subsequent order by the trial judge, and there was no duty to mitigate by the prosecution.

Finally, Wood makes an argument involving the interpretive report which the prosecution discovered was not disclosed with the balance of the materials on Wednesday night. He argues this report was not actually a report until the prosecution requested it, as it was in Dr. Hamilton's computer and had never been generated as a report. We find this particular argument irrelevant with respect to this appeal. The transcript of the sanction hearing, along with the affidavit of Wood's attorney which was submitted with the motion for stay of the sanction, demonstrates that the trial judge only sanctioned Wood for failure to turn over the Woodcock–Johnson test. Therefore, any arguments involving the other discovery violations have no bearing on this appeal.

■ We conclude that there was indeed a violation of the Idaho Criminal Rules relating to discovery. A discovery request was made and further, the trial court advised Wood prior to trial that he was to comply with the request. There is no additional burden upon the state to contact defense counsel to find out why the discovery has not been forthcoming. Moreover, if the appellant intended to object to the scope of discovery, or to the particular items requested, it was incumbent upon him to either object to the discovery request or file a request for a protective order.

## V.

### THE PUBLIC DEFENDER WAS NOT DENIED DUE PROCESS

■ Wood argues that he was denied due process because he was not aware that he would be sanctioned for actions other than his failure to disclose the Woodcock–Johnson

test. We have stated that due process requires notice and a meaningful opportunity to be heard. *Peltier v. State*, 119 Idaho 454, 456–57, 808 P.2d 373, 375–76 (1991).

 Wood claims that he had no notice he would be sanctioned for the discovery violations which occurred after his failure to disclose the Woodcock–Johnson test results. On the contrary, the record is clear that Wood was being sanctioned only for the first discovery violation and, therefore, received sufficient notice. Although the trial judge referred to the further discovery violations when he made his ruling at the sanction hearing, he specifically stated that all references to these subsequent violations were made only to illustrate why he believed the first discovery violation was intentional and willful. Other courts have acknowledged that the trial court should let the record reflect its findings of willful conduct. *Cf. Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir.1989) (stating that courts should make a finding of willful misconduct, rather than mistake, before approving the imposition of monetary sanctions under local rules).

Wood was notified of the sanction, given an opportunity to respond, given notice of the sanction hearing, and was allowed to postpone the hearing to give counsel time to prepare. He then was heard by the trial court, through his attorney, and was given a detailed ruling on why the sanction was imposed. Accordingly, we hold that Wood did not suffer any deprivation of his right to due process.

## VI.

### THE SANCTION WAS RESTITUTIONARY RATHER THAN PUNITIVE

Wood argues that the sanction imposed by the trial court was designed to punish him rather than to reimburse the prosecution for the cost associated with Wood's failure to disclose. He contends that this is a punitive sanction, rather than restitutionary, and that he should therefore be afforded the due process protections which apply to contempt proceedings.

In *State v. Thompson*, 119 Idaho 67, 803 P.2d 973 (1990), we upheld a monetary sanction assessed against the prosecution for a discovery violation similar to the one involved here. The defense attorney had made a request for discovery and when the prosecution failed to comply, the trial court ordered them to produce the requested information. *Id.* at 68, 803 P.2d at 974. The prosecution still refused to comply and the trial court ultimately assessed monetary sanctions in the amount of the additional attorney fees incurred. *Id.* at 69, 803 P.2d at 975. The trial court specifically declined to impose the sanction of excluding the undisclosed information because this would not further the goals of discovery. *Id.* at 70, 803 P.2d at 976.

Aside from the reversal of roles between the defense and prosecution, the case before us is very similar to *Thompson.* As in *Thompson,* Wood failed to disclose information after the prosecution requested it and the trial court ordered its production. Likewise, in this case as in *Thompson,* the court below declined to impose the harshest sanction, electing instead to impose a sanction which was directed at the responsible party and which attempted to reimburse the complaining party.

 Wood argues that *Thompson* is distinguishable because it dealt with a case in which the complaining party was actually out of pocket for fees wasted because of the discovery violation and fees necessitated in obtaining an order for discovery; thus the defense had been prejudiced by the failure to disclose. As to his case, Wood argues that the sanction was not a reimbursement to the prosecution because they were never prejudiced by the failure to disclose. We find there is evidence in the transcripts of the sanction hearing and the trial, that the prosecution was prejudiced by the late disclosure. The prosecution testified at the sanction hearing that it took them many additional hours on Wednesday night to evaluate the new information. The prosecution was in touch with their expert, Dr. Beaver, the entire evening. The prosecution also testified that Dr. Beaver was required to work more than they had originally planned due to the new evidence. The transcript demonstrates

that the prosecution tried to get up to speed without delaying the trial and did so by relying more heavily on their expert. The prosecution was prejudiced by the late disclosures because the test contained information the prosecution was not aware of and was unprepared to rebut without the extra efforts of Dr. Beaver. The focus of the case had to change due to the undisclosed test and the prosecution testified they never fully prepared due to the lateness of the disclosure.

Wood's argument that the prosecution would have had to spend the time evaluating the test anyway, no matter when it was turned over, is without merit. It is true that the prosecution would have looked at the test regardless of when it was disclosed, however had disclosure been timely, it is clear that the prosecution would not have had to put in the same number of hours, or the expert's hours. Additionally, the prosecution testified they had to use Wednesday night scrambling to prepare for the next day in light of the newly disclosed test. This is time that could have been spent preparing for other issues at trial.

■ The fact that the trial judge did not order the sanction paid directly to the prosecution is troubling, as it could be an indication that he was treating it as a fine rather than restitution to the prosecution. However, the record indicates that the sanction was paid into the district court fund, rather than to the county general fund. It is not unusual for at least some of the prosecution and defense witnesses to be paid from the district court fund and, therefore, the district court could have intended this as the best place from which to reimburse the prosecution for its additional witness costs. While we agree it is difficult to say that imposing monetary sanctions against an attorney is not punitive in nature, I.C.R. 16, similar to I.R.C.P. 11, permits a judge under appropriate circumstances to sanction a party; these sanctions include reimbursement to the other party for costs incurred as a result of the first party's dilatory tactics. Particularly in a serious felony case such as this, the trial court is called upon to fashion a sanction which will impress counsel with the importance of responding to discovery requests, and yet will not prejudice the defense of the case.

Based on the record below, we hold that the monetary sanction imposed by the trial judge was not punitive but was restitutionary in nature. Therefore, we conclude that Wood was afforded all due process applicable to the imposition of the sanction.

## VII.

### THE TRIAL COURT CORRECTLY INTERPRETED THE RULE

■ Wood argues that there is no authority for the imposition of monetary sanctions against him personally. In section III above we outlined the standards of review for upholding the order of the trial court, and for reviewing the actual sanction imposed. The issue is whether the trial court correctly interpreted I.C.R. 16(j) as allowing the imposition of monetary sanctions against the public defender personally. This is a question of law, and therefore we exercise free review. *O'Loughlin v. Circle A Const.,* 112 Idaho 1048, 1051, 739 P.2d 347, 350 (1987); *Hilt v. Draper,* 122 Idaho 612, 616, 836 P.2d 558, 562 (Ct.App.1992).

The pertinent portion of I.C.R. 16(j) which we are called upon to interpret provides:

Orders of discovery. If a party has failed to comply with a request for discovery under this rule, the court upon motion of a party, may, ... enter such other order as it deems just in the circumstances.

In *State v. Ruiz,* 106 Idaho 336, 337, 678 P.2d 1109, 1110 (1984), we noted that additional guidance in our interpretation of the Idaho Criminal Rules is contained in I.C.R. 2(a) which requires the criminal rules to be construed in accordance therewith:

Purpose and construction. These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay.

■ In the present case, we must interpret I.C.R. 16(j) to further the purposes of the Idaho Criminal Rules. We begin by

observing that the use of the term "party" within I.C.R. 16(j) is broad enough to encompass both the state and defendant, as well as their respective attorneys. While I.C.R. 16(j) is less than clear as to sanctions against an individual attorney, it uses the term "party" throughout the rule and this wording certainly supports such a sanction. Moreover, this interpretation conforms with I.C.R. 2(a) which declares that the rules are to provide for fairness in administration. In the present case, fairness in administration dictates that the sanction be imposed against Wood individually, and not his client. There is no indication in the record that Wood's client requested him to intentionally violate the discovery order. The sanctions authorized under this rule must be administered against the individual responsible. Therefore, we find that the term "party" encompasses a party's authorized representative.

■ We also conclude that the rule supports the imposition of the sanction against Wood personally. The language in I.C.R. 16(j) requires that the sanction be imposed as the trial court deems just under the circumstances. It is apparent from the transcript that Wood intentionally violated a discovery order, and there is no indication that the county ever instructed Wood to proceed in this fashion. Therefore, the sanction was appropriately levied against Wood, and not the county.

Additionally, we note that other courts have interpreted similar rules as authorizing the imposition of sanctions against the individual attorney for discovery violations in criminal cases. *Turk v. State,* 662 P.2d 997, 1000–01 (Alaska Ct.App.1983) (citing *State v. Lewis,* 632 P.2d 547 (Alaska Ct.App.1981)). Cf. *Pavelic & LeFlore v. Marvel Entertainment,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (United States Supreme Court case interpreting Rule 11 as providing for sanctions against an individual attorney, and not his firm); *Chilcutt v. United States,* 4 F.3d 1313, 1319 (5th Cir.1993) (lead prosecutor was found to have intentionally violated the criminal contempt rule, and was ordered to pay from his own funds, and not to seek reimbursement from the taxpayers).

We find this interpretation of I.C.R. 16(j) conforms with the purposes of the criminal rules as defined in I.C.R. 2(a). Ordering Wood to pay from his own funds secures simplicity in procedures, fairness in administration and elimination of unjustifiable expense and delay. Furthermore, this interpretation allows the trial court to sanction the individual responsible, and yet preserve as far as possible the rights of the other parties. Accordingly, we affirm the trial court's determination that I.C.R. 16(j) authorizes the imposition of sanctions against Wood personally.

## VIII.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IMPOSING THE SANCTION

■ Wood also argues that the prosecution failed to prove it was damaged in the amount of $1,781 and consequently, no sanction may be imposed. Wood argues that since the prosecution did not ask for a continuance, they must not have needed any additional time to prepare. We review the sanction imposed under the abuse of discretion standard. *Matter of Williams,* 120 Idaho 473, 476, 817 P.2d 139, 142 (1991) (citing *Mathison v. Felton,* 90 Idaho 87, 408 P.2d 457 (1965)); *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ We conclude, based on the record below, that the trial judge did not abuse his discretion by imposing the $1,781 sanction. We believe that the trial court was aware of the array of sanctions available, and correctly perceived the issue as one of discretion. The trial judge rejected the most severe sanction available; he imposed a narrowly tailored sanction against the individual responsible and he attempted to remedy the damage caused by the misconduct. We find that the trial court acted within the outer boundaries of its discretion and consistently with any legal standards applicable to specific choices.

■ Finally, we hold that the trial court reached its decision by an exercise of reason. The prosecution submitted a bill from which the trial judge made a determination as to the cost of reimbursement. The record shows that the trial judge did not sanction

Wood for the entire bill submitted by the prosecution. For example, the trial judge did not award the prosecution money for time spent by its attorneys. Additionally, the judge did not sanction Wood for the total cost of Dr. Beaver's services. The total bill was $3707.50, yet the judge awarded only a portion of that.

Although the record is not totally clear as to the basis for the sanction amount, it appears that the trial judge sanctioned Wood for the costs associated with Dr. Beaver's bill on December 2 and 3. These costs included time to review the newly disclosed test, consultation, and travel time. When asked at trial whether the prosecution planned to call Dr. Beaver, the prosecutor, Mr. Mink, indicated that it depended on what Dr. Hamilton would say. Mr. Mink indicated he had no way of knowing what Dr. Hamilton would say in connection with the newly disclosed evidence until he had time to confer with Dr. Beaver. That night, the prosecution was in conference with Dr. Beaver discussing the newly disclosed test, and thereafter summoned Dr. Beaver to Twin Falls. Although the prosecution may have called Dr. Beaver to Twin Falls regardless of the late disclosure, it is not at all clear that Dr. Beaver would have been called to testify rather than simply continuing their conferences. Therefore, we find that there was evidence supporting the assessment of travel time against Wood.

At trial the prosecution stated they would be consulting Dr. Beaver immediately about the newly disclosed tests. Dr. Hamilton's testimony was on December 2, and therefore supports assessing the consultation and review time from December 2 and 3 against Wood. We believe that the trial court appropriately sanctioned Wood for reimbursement to the prosecution for costs incurred as a result of Wood's dilatory conduct. Under these circumstances, we hold that the trial judge did not abuse his discretion in imposing the $1,781 sanction.

## IX.

### THE SANCTION WILL NOT HAVE A CHILLING EFFECT

Wood argues all public defenders will think about this personal sanction and it will restrain their zealousness in the defense of indigents. We do not agree. The imposition of this sanction will not have a chilling effect on attorneys who are doing their jobs within the rules and statutes. This will only affect those who choose to ignore the rules or push them beyond their limits, in which case it is appropriate to chill that type of conduct. In fact, it will further the goals of discovery to stop intentional violations which have the effect of throwing the opposing party off-guard.

Other courts have recognized that our legal system requires zealous and competent advocates; yet it also requires that attorneys follow the parameters of the law. In *Chilcutt v. United States*, 4 F.3d 1313 (5th Cir. 1993), the Fifth Circuit stated:

> This "chilling" argument has no more force when invoked by the [offending attorney who failed to disclose] than when invoked by opponents of Rule 11 of the Federal Rules of Civil Procedure. As long as district courts use their sanction authority carefully, no such effects will occur. In any event, appellate review will, in appropriate cases, deter excessive or unwarranted sanctions by the district courts.

*Id.* at 1327 n. 37. As indicated in *Chilcutt*, we believe that appellate review will adequately address any potential misuse of sanctions.

We find no merit in the argument that the imposition of sanctions will chill the advocacy of the defense attorneys in our state. The imposition of sanctions against the individual violating the discovery rules promotes rather than chills the orderly processes of our trial system.

## X.

### ATTORNEY FEES

The state argues it is entitled to attorney fees and costs on appeal pursuant to I.C. § 12–114 and I.A.R. 40 and 41. We find that there is a legitimate question presented in this appeal as to the ability of the trial court

to order such sanctions, and to order them paid by defense counsel individually. Thus, attorney fees are not appropriate.

## XI.

## CONCLUSION

We find that there was a discovery rule violation, and that the trial judge did not abuse his discretion in imposing sanctions. We hold that the sanction amount is supported by the record and that its imposition furthers the goals of discovery. We award costs on appeal to respondent.

McDEVITT, C.J., and JOHNSON and SILAK, JJ., and MOSS, J. Pro Tem., concur.