**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 32038**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2007 Opinion No. 23** |
| Plaintiff-Appellant-Cross Respondent, ) | |
| ) | **Filed: April 27, 2007** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| ROBERT ANDERSON, ) | |
| ) | |
| Defendant-Respondent-Cross ) | |
| Appellant. ) | |
| ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. D. Duff McKee, District Judge; Hon. Thomas P. Watkins, Magistrate.

Decision of the district court on intermediate appeal, setting aside jury verdict and vacating conviction for excessive DUI, affirmed in part, reversed in part, and remanded.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for appellant. Lori A. Fleming argued.

Ringert, Clark Chtd., Boise, for respondent. James G. Reid argued.

_____

SCHWARTZMAN, Judge Pro Tem

The state appeals from the district court's intermediate appellate decision and order reversing, on the ground of insufficient evidence, Robert Anderson's conviction for misdemeanor driving under the influence with an alcohol concentration of .20 or more. Anderson cross-appeals on four alternative grounds for relief addressed and rejected by the district court. We affirm the district court's order in part, reverse in part, and remand.

**I.**

**FACTUAL & PROCEDURAL BACKGROUND**

Following a single vehicle traffic accident, Anderson was arrested for driving under the influence of alcohol. At the jail, he performed three breath tests on the Intoxilyzer 5000. The first returned an alcohol concentration of .22 and the second .19. Because the variance exceeded

1

.02, the arresting officer, pursuant to Idaho State Police standard operating procedure for breath testing,[1] had Anderson perform a third test, which returned an alcohol concentration of .24.

Anderson was charged by complaint with driving with "an alcohol concentration of 0.20 . . . or more, as shown by an analysis of his blood, breath or urine by a test requested by a police officer . . . ." Idaho Code § 18-8004C(1) (hereinafter referred to as "excessive DUI"). Anderson moved to dismiss the charge, contending that because the test that registered .19 alcohol concentration was a valid test, he could not be properly convicted of excessive DUI as the state could not prove this element beyond a reasonable doubt. The magistrate denied the motion, based in part upon the state's assertion that it would explain the reason for the .19 result through expert testimony.

At trial, the jury was instructed the parties had stipulated that all of the elements of I.C. § 18-8004(1)(a), i.e., driving with an alcohol concentration of .08 or more and hereinafter referred to as "simple DUI," had been established and that the only issue for the jury to resolve was whether Anderson had an alcohol concentration of .20 or more. The state called two witnesses. The arresting officer testified, in summary, that the three tests were performed at one-minute intervals, that he noticed no irregularities in the testing procedures, that Anderson performed the three tests correctly, and that the Intoxilyzer 5000 accepted each of the breath samples and returned the referenced results. The state's expert, David Laycock, testified that the .19 test might have occurred because Anderson may not have blown as hard or as long on this sample as he did on the first or third samples. The expert further testified that because the machine was calibrated low, to Anderson's benefit, and because the .22 and .24 results were within .02 of each other, in his opinion Anderson's alcohol concentration was at least .20. The jury returned a guilty verdict.

Anderson appealed to the district court on numerous grounds. The district court reversed the conviction for excessive DUI holding, in essence, that the state failed to prove the disputed element beyond a reasonable doubt. The district court also expressly addressed, and rejected,

---

[1]     This procedure is set forth in the Idaho State Police manual entitled "Standard Operating Procedure - Breath Alcohol Testing," issued pursuant to I.C. § 18-8004(4) and Idaho Administrative Code 11.03.01.013.03. *See In re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004).

four alternative grounds for relief advanced by Anderson. The case was then remanded to the magistrate for further proceedings.[2] The state appeals from the reversal of the conviction for excessive DUI and Anderson cross-appeals from the denial of his alternative grounds for relief.

## II.

## STATE'S APPEAL

**A.** **Was the State's Evidence Sufficient to Prove Beyond a Reasonable Doubt that Anderson Had an Alcohol Concentration of .20 or More?**

Idaho Code § 18-8004C requires as an essential element that a driver have an alcohol concentration of .20 or more "as shown by an analysis of his blood, breath or urine by a test requested by a police officer." On intermediate appeal, the district court held that the evidence adduced at trial was insufficient to sustain a conviction for excessive DUI, I.C. §§ 18-8004C, 18-8004(1)(a). The court first reasoned that if the state's evidence is that a defendant's breath alcohol concentration is both greater than and less than .20, the statutory threshold for this offense, then the evidence is insufficient as a matter of law to meet the burden of proof beyond a reasonable doubt. The district court then focused on whether the state presented competent evidence on which the jury could rationally find that the .19 blow was an invalid sample that could be disregarded. The district court concluded that the state had failed to present such evidence, and because all three alcohol concentration tests were deemed valid samples, the state had failed to prove the element of an alcohol concentration of .20 or more.

The state argues that in order to sustain a conviction for excessive DUI, it need not present any trial evidence invalidating the .19 test result and, in the alternative, that if such a showing is required, that it was made. We address each in turn.[3]

The state first contends that in order to sustain a conviction for excessive DUI over a sufficiency of the evidence challenge, it need not have presented any trial evidence invalidating the .19 test result. We disagree. Evidence is sufficient to support a verdict where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution

---

[2]     *See infra* at Section II(D).

[3]     While addressing these issues, we are also mindful that it is important to consider the effect of the analysis here, specific to excessive DUI, upon an alcohol concentration prosecution for simple DUI, section 18-8004(1)(a), for the two inquiries should be the same, absent the statutory prohibition of prosecution under the latter statute as discussed below.

sustained its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998). We agree with the district court's analysis that if multiple *valid* tests have been done, and at least one result is less than the statutory threshold for the offense, the state cannot satisfy its burden of proof beyond a reasonable doubt simply by asking the jury to disregard the result showing innocence, for a verdict of guilty in that instance would be based on little more than speculation. In this light, it is important to note that the jury was asked to determine guilt based upon three conflicting test results from analysis done by the state's machine. With respect to the only element at issue, two test results showed guilt and the third showed innocence as to excessive DUI. Such evidence is not sufficient to support a criminal conviction.

The district court next focused on whether the state presented competent evidence to "explain" the .19 test result so that the jury could properly disregard it. With variation in terminology, we agree with the district court's analysis. In *State v. Mills*, 128 Idaho 426, 913 P.2d 1196 (Ct. App. 1996), a prosecution for simple DUI, I.C. § 18-8004(1)(a), the defendant gave two breath samples on the Intoxilyzer 5000, returning results of .10 and .09. Mills moved to dismiss on the ground that an express statutory provision, I.C. § 18-8004(2),[4] prohibited his prosecution for simple DUI if one of the tests requested by the police officer showed an alcohol concentration of less than the then-existing .10 threshold. On appeal, this Court agreed, holding:

> Idaho Code § 18-8004(2) plainly speaks of "a test," which the [Idaho Department of Law Enforcement] in turn defines as consisting of at least two separate breath samples. We find this IDLE requirement of two samples to be inconsistent with the plain language of the statute. We hold that one sample constitutes "a test," as that term is used in I.C. § 18-8004(2), and if that sample shows a BAC level below 0.10, the accused cannot be prosecuted for DUI under this statute. Furthermore, if more than one sample is taken, *each valid sample constitutes a test*. If any of those samples falls below 0.10 then, again, the accused cannot be prosecuted for DUI under I.C. § 18-8004. . . . *However, taking two samples for quality control purposes does not permit the state to disregard one valid sample that shows an alcohol concentration of less than 0.10.*

---

[4]     The statute provided that, with exceptions, a person "shall not be prosecuted for driving under the influence of alcohol" if a test result returns an alcohol concentration below the statutory threshold.

> *Consequently, because one of Mills's breath samples fell below 0.10, and the state made no showing that the sample was an invalid aberration, Mills cannot be prosecuted for DUI.*

*Mills*, 128 Idaho at 429, 913 P.2d at 1199 (emphasis added).[5]

As noted by the state, there is no corresponding express statutory provision precluding prosecution for excessive DUI where a test sample results in a reading of an alcohol concentration under .20. From this premise, the state asserts that this Court's holding in *Mills* is not relevant to the instant inquiry. We disagree and hold that the general evidentiary principles set forth in *Mills* apply equally to the circumstance presented here, namely a sufficiency-of-the-evidence inquiry where the state's tests returned at least one result of less than the minimum alcohol concentration necessary for a conviction. Accordingly, the state was required to show at trial that the .19 result was not a valid sample or test, or, in other words, that this test result was an "invalid aberration" such that the finder of fact could properly disregard it.

The state argues that, at trial, it established that the .19 blow was an invalid sample in several ways, all based upon the testimony of its expert witness. The state first asserts that it satisfied its burden through Laycock's testimony that Anderson *may* not have blown as hard or as long on the .19 sample as he did on the first or third samples and that the machine was calibrated low, to Anderson's benefit. We again disagree, noting that this testimony does nothing to invalidate the .19 blow. The arresting officer testified that before the tests were done he calibrated the machine, that the calibration was within tolerance and that if it had not been, the machine would not operate. He further testified that the Intoxilyzer 5000 emits a tone that the subject must keep steady by constant breath flow for four to six seconds, and that Anderson performed the tests correctly. As this Court has previously indicated, where a subject fails to provide the requisite breath sample, the Intoxilyzer 5000 prints out a numerical reading along with a message that the sample is "deficient." *See generally State v. Mazzuca*, 132 Idaho 868, 979 P.2d 1226 (Ct. App. 1999). Here, the printout of the test results reveals that all three samples were, as far as the machine was concerned, valid in that they were listed simply as

---

[5] In *Mills*, we also noted that "[w]e do not here question the authority of the IDLE to adopt standards requiring that more than one sample be taken when breath testing is performed. As stated in the policy statement attached as Appendix B to the state's brief, such a practice helps rule out 'the possibility of an instrument malfunction, radio frequency interference, mouth alcohol or other rapidly fluctuating source of error which might effect a single result.'" *Id.*

"subject test." In short, the .19 sample was not an invalid test according to the machine's default protection mechanisms. We agree with the district court's analysis that Laycock's testimony concerning the force of Anderson's blows was merely hypothetical or speculative given the arresting officer's testimony that the blows were properly performed and that he had noted no irregularities in his report.

The state next argues that it satisfied its burden through Laycock's opinion testimony that Anderson's alcohol concentration was at least .20. Laycock based his opinion on the grounds that the .22 and the .24 blows were within .02 of each other and on the low calibration of the machine. Regardless of whether this is admissible opinion testimony as helpful to the trier of fact, it again gives no basis for a finding that the .19 test was an invalid sample. That is, it shows no legally sufficient reason for the jury to arbitrarily reject the .19 test.

In short, the state failed to produce sufficient evidence that the .19 test was invalid because the Intoxilyzer 5000 malfunctioned during this test, that the .19 sample was "deficient" because Anderson failed to blow with enough force, or for a sufficient time, to provide an adequate volume of breath for the machine to test, or because the test was for any other reason not valid. Evidence is sufficient to support a verdict where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of the crime beyond a reasonable doubt. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101. Where, as here, the jury was simply asked to determine guilt by choosing between conflicting valid test results presented by the state, without an evidentiary basis to disregard the test result showing innocence, the defendant's guilt has not been proved beyond a reasonable doubt.

Accordingly, the district court's intermediate appellate decision and order vacating Anderson's conviction for excessive DUI is affirmed. We next address Anderson's issues presented on cross-appeal for the reason that, if sustained, each would prevent Anderson's conviction for the lesser offense of simple DUI.

## II.
### DEFENDANT'S CROSS-APPEAL
**A.    Challenge to the Complaint**

Well after the jury returned its guilty verdict, Anderson filed a motion to dismiss before the magistrate, contending that perceived defects in the complaint rendered his conviction

6

invalid. The magistrate rejected Anderson's claim and, on intermediate appeal, the district court affirmed. In his cross-appeal, Anderson first asserts that the complaint was jurisdictionally defective in that it failed to charge an offense, specifically that the complaint improperly cites to I.C. §§ 18-8004C[6] and "18-8004" instead of the more precise applicable subsection of I.C. § 18-8004(1)(a).

Whether a court lacks jurisdiction and whether a charging document conforms to the requirements of law are questions of law over which appellate courts exercise free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004); *State v. Murray*, 143 Idaho 532, 534, 148 P.3d 1278, 1280 (Ct. App. 2006). Pursuant to Idaho Criminal Rule 12(b)(2), an assertion that a charging document fails to show jurisdiction of the court or to charge an offense may be raised at any time. A charging document is jurisdictionally defective if it fails to set forth the elements of the crime. *Jones*, 140 Idaho at 758-59, 101 P.3d at 702-03; *Murray*, 143 Idaho at 536-37, 148 P.3d at 1282-83.

Here, Anderson did not complain of the perceived infirmity in the complaint until after the verdict was rendered. Where a jurisdictional challenge to a complaint is not made before trial, liberal construction standards apply. *Id.* In this circumstance, our Supreme Court has held that the charging document imparts jurisdiction if it "contains a statement of the territorial jurisdiction of the court and a citation to the applicable section of the Idaho Code." *State v. Quintero*, 141 Idaho 619, 622, 115 P.3d 710, 713 (2005).

There is no dispute that the complaint alleged that Anderson committed the crime in Idaho. By specifically citing I.C. § 18-8004, the complaint further contains a citation to the applicable section of the Idaho Code. Our Supreme Court has not required that, as asserted by Anderson, the charging document contain a specific reference to the applicable *subsection* of the Idaho Code, and we specifically reject any such rigid requirement for the limited purpose of conferring jurisdiction on the trial court.

---

[6] As relevant to this appeal, Idaho Code § 18-8004C provides:

(1) Any person who pleads guilty to or is found guilty of a violation of the provisions of section 18-8004(1)(a), Idaho Code, for the first time, but who has an alcohol concentration of 0.20, as defined in section 18-8004(4), Idaho Code, or more, as shown by an analysis of his blood, breath or urine by a test requested by a police officer, shall be guilty of a misdemeanor . . . .

Finally, to the extent that Anderson is advancing a due process challenge to the complaint, it is waived because he failed to raise it in a timely manner before trial. Idaho Criminal Rule 12(b)(2); *Quintero*, 141 Idaho at 622, 115 P.3d at 713; *Jones*, 140 Idaho at 760, 101 P.3d at 704; *Murray*, 143 Idaho at 536, 148 P.3d at 1282. Anderson's challenge to the complaint is without merit.

**B.    The Magistrate Did not Err by Declining to Exclude the Testimony of the State's Expert Because of a Discovery Violation**

Prior to trial, the magistrate issued a scheduling order requiring pretrial disclosure of "the name, address, phone number and curriculum vitae of any expert witnesses that may be called as an expert witness." The state's discovery response disclosed: "David Laycock, criminalist/expert witness, State Crime Lab." When the state called Laycock to testify at trial, Anderson moved to exclude his testimony for the state's failure to disclose the expert's address, phone number and curriculum vitae. The magistrate held that the state had violated the disclosure order, but declined to impose the sanction of exclusion of Laycock's testimony, holding that any prejudice to the defense did not warrant such a severe sanction. Instead, the magistrate called a brief recess to allow defense counsel to review Laycock's curriculum vitae, provided by the prosecutor, for purposes of cross-examination.

Anderson contends that the magistrate committed reversible error by refusing to exclude Laycock's testimony as a discovery sanction. Under Idaho law, a trial court may impose sanctions for discovery violations, including, in appropriate circumstances, the severe sanction of exclusion of a witness. I.C.R. 16(e)(2); 16(j); *State v. Miller*, 133 Idaho 454, 456-57, 988 P.2d 680, 682-83 (1999); *State v. Harris*, 132 Idaho 843, 846-47, 979 P.2d 1201, 1204-05 (1999); *State v. Lamphere*, 130 Idaho 630, 633-34, 945 P.2d 1, 4-5 (1997); *State v. Stradley*, 127 Idaho 203, 206, 899 P.2d 416, 419 (1995); *State v. Vondenkamp*, 141 Idaho 878, 884, 119 P.3d 653, 659 (Ct. App. 2005); *State v. Albert*, 138 Idaho 284, 287-89, 62 P.3d 208, 211-13 (Ct. App. 2002); *State v. Winson*, 129 Idaho 298, 302-03, 923 P.2d 1005, 1009-10 (Ct. App. 1996). "The choice of an appropriate sanction, or whether to impose a sanction at all, for a party's failure to comply with a discovery request or order is within the discretion of the trial court." *State v. Hawkins*, 131 Idaho 396, 405, 958 P.2d 22, 31 (Ct. App. 1998). In reviewing a discretionary decision we ask: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether the trial court acted within the boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and (3) whether the trial court

reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Sanctions serve the dual purposes of encouraging compliance with discovery and punishing misconduct. *Roe v. Doe*, 129 Idaho 663, 667, 931 P.2d 657, 661 (Ct. App. 1996). In determining whether a sanction will be imposed and, if so, what that sanction will be, the trial judge must balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party in light of the twin aims of the sanction power. Ultimately, the punishment meted out for a discovery violation, if any, should fit the misconduct. *Id.*

The record reveals that the state's culpability was minimal in that defense counsel knew who Laycock was and that Laycock worked for the Idaho State Police. The state's discovery response was provided nearly one year prior to trial, and Anderson did not assert that he attempted to call or contact Laycock but was thwarted by the lack of information in the state's disclosure. While he is not expressly required to do so, *Stradley*, 127 Idaho at 209, 899 P.2d at 422, Anderson's failure to bring to the magistrate's attention his complaints regarding the inadequacy of the state's discovery response until trial had begun weighs against a finding of unfair prejudice. *State v. Matthews*, 124 Idaho 806, 812, 864 P.2d 644, 650 (Ct. App. 1993). Although Anderson complains on appeal that he was "extremely prejudiced" by the late disclosure of Laycock's curriculum vitae with regard to his ability to effectively cross-examine the witness, the record does not support his assertion. After reviewing Laycock's curriculum vitae, Anderson conducted a detailed cross-examination of Laycock concerning the witness's qualifications and credentials. Finally, when prompted by the magistrate, Anderson declined any lesser sanction more appropriately tailored to the discovery offense at issue, but instead insisted that exclusion of Laycock's testimony was the only satisfactory remedy.

In short, this is not a case where a discovery violation resulted in a party being blindsided by a previously unknown witness or undisclosed evidence. We find no error in the magistrate's decision not to exclude Laycock's testimony as a discovery sanction.

**C.     The Magistrate Did not Err in Admitting the Alcohol Concentration Results Over Anderson's Objection that the State Failed to Present Foundation that the Intoxilyzer 5000 Was a Method of Analysis Approved by the Idaho State Police**

To establish foundation for the admission of alcohol concentration test results, as relevant to this appeal, the prosecution was required to show that the Intoxilyzer 5000 was a method of

9

analysis approved by the Idaho State Police. *See* I.C. § 18-8004(4); *State v. Alford*, 139 Idaho 595, 597, 83 P.3d 139, 141 (Ct. App. 2004); *State v. Nickerson*, 132 Idaho 406, 410-11, 973 P.2d 758, 762-63 (Ct. App. 1999); *State v. Winson*, 129 Idaho 298, 301, 923 P.2d 1005, 1008 (Ct. App. 1996); *State v. Van Sickle*, 120 Idaho 99, 103, 813 P.2d 910, 914 (Ct. App. 1991). While there are a number of different ways to do this, here the state chose to do so through the testimony of a witness. Anderson claims that the foundation laid was insufficient and therefore the alcohol concentration test results were improperly admitted into evidence. We disagree.

The state's expert stated that he was employed at the Idaho State Police Forensic Laboratory and had been since 1982. He testified that from 1993 to 1997 he was the alcohol program manager and was responsible for evaluation and certification of breath alcohol testing equipment and for training concerning their use and that, although he currently did not hold that title, he still "helps out" with these same functions. Laycock further explained that he personally wrote the standard operating procedure for the Intoxilyzer 5000, and that he had testified in many cases concerning its use. The prosecutor then asked, in essence, whether the Intoxilyzer 5000 was approved by the Idaho State Police as a method to measure alcohol concentration. Laycock answered:

> Yes, Your Honor. This is one of our - this is a State certified instrument. It is one of the earlier ones that came into the State of Idaho and was put in use [sometime] in the 1990s.

Anderson argues that this foundation is insufficient because it includes no specific testimony that the Intoxilyzer 5000 was approved as a method for alcohol concentration analysis on May 28, 2001, the day he was arrested and performed the tests. Even assuming that such a hypertechnical foundation is required, the state presented adequate foundation by Laycock's testimony that the Intoxilyzer 5000 was approved in the 1990's and was still in use, and therefore approved, at the time of Anderson's trial. The Intoxilyzer 5000 has long been generally recognized as an approved breath testing device. *See State v. Charan*, 132 Idaho 341, 342, 971 P.2d 1165, 1166 (Ct. App. 1999). We find no abuse of discretion in the trial court's decision to admit the alcohol concentration test results. *Alford*, 139 Idaho at 597, 83 P.3d at 141. Anderson's claim of lack of foundation for admission of the alcohol concentration test results is, therefore, without merit.

10

**D. Challenge to the Verdict Form: Remedy for Invalid Conviction of Excessive DUI**

Anderson lastly contends that an error in the verdict form also renders invalid any conviction for DUI, be it excessive or simple. His argument is based upon the particular language in I.C. § 18-8004C which states: "Any person who pleads guilty to or is found guilty of a violation of the provisions of section 18-8004(1)(a), Idaho Code, for the first time, but who has an alcohol concentration of 0.20 . . . or more . . . ." is guilty of excessive DUI. The verdict form asked the jury to determine guilt on excessive DUI first, and then if a not guilty verdict was reached, to determine guilt or innocence on simple DUI. Anderson asserts that, in light of the above emphasized language of the statute, the verdict form should have asked the jury to make the finding of guilt under I.C. § 8004(1)(a) first, and because it did not, he was not properly found guilty of simple DUI.[7] We disagree.

Whether the jury has been properly instructed presents a question of law over which this Court exercises free review. *State v. Merwin*, 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998); *State v. Harris*, 136 Idaho 484, 485, 36 P.3d 836, 837 (Ct. App. 2001). Jury instructions must be read in their entirety, as a whole, not in their isolated parts. *State v. Aragon*, 107 Idaho 358, 363, 690 P.2d 293, 298 (1984). Where the jury instructions, taken as a whole, correctly state the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge contained in all the instructions and was not misled by any isolated portion thereof. *State v. Lankford*, 113 Idaho 688, 694, 747 P.2d 710, 716 (1987), *overruled on other grounds by Lankford v. Idaho*, 500 U.S. 110 (1991).

Here, the jury was given an instruction setting forth all of the elements of simple DUI, I.C. § 18-8004(a)(1), under the heading "Driving Under the Influence." The verdict form first asked the jury to determine: "Is Robert Anderson guilty or not guilty of Driving Under the Influence While Having an Alcohol Concentration of .20 or more?" The jury answered this question in the affirmative. Therefore, the jury necessarily found all of the elements of simple DUI to be proven beyond a reasonable doubt, in addition to finding the additional element of an

---

[7] On intermediate appeal, the district court agreed with Anderson's argument in fashioning a remedy on its reversal of the excessive DUI conviction. The district court held that based upon the verdict form, the jury did not specifically find that Anderson committed the "lesser" offense of simple DUI and remanded the case to the magistrate, leaving for his consideration whether a retrial for simple DUI was barred by double jeopardy.

alcohol concentration of .20 or more as relevant to an excessive DUI charge.[8] Moreover, the jury was also instructed that Anderson *stipulated* that all of the elements of simple driving under the influence had been established and that the only issue for the jury to resolve was whether Anderson had an alcohol concentration of .20 or more.

Anderson's claim of error in the verdict form is, therefore, without merit. Accordingly, since Anderson's conviction for excessive DUI must be vacated, the appropriate remedy is to now remand the case to the magistrate for imposition of judgment and sentencing on a charge of simple DUI.

## III.

## CONCLUSION

For the foregoing reasons, we uphold the district court's intermediate appellate decision vacating Anderson's conviction for excessive driving under the influence of alcohol on the ground of insufficient evidence. This case is remanded to the magistrate for imposition of a conviction for "simple" driving under the influence, I.C. § 18-8004(a)(1), and for sentencing on that charge.

Judge LANSING and Judge GUTIERREZ **CONCUR.**

---

[8] The magistrate also ruled after trial that the jury, by necessity, in reaching its verdict concluded that Anderson was driving under the influence of alcohol. We note that if one is driving with an excessive alcohol concentration, one must, *per force*, drive with over a .08 alcohol concentration.

12