988 P.2d 680

STATE of Idaho, Plaintiff–Respondent,

v.

Thomas M. MILLER, Defendant–
Appellant.

No. 25261.

Supreme Court of Idaho,
Coeur d'Alene, April 1999 Term.

Sept. 28, 1999.

John M. Adams, Kootenai County Public
Defender;  J. Bradford Chapman, Deputy
Public Defender, Coeur d'Alene, for appel-
lant.  J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for the respondent. Kenneth K. Jorgensen argued.

SCHROEDER, Justice.

Thomas M. Miller (Miller) appeals the judgment of conviction and sentence entered against him for the felony of driving under the influence of alcohol (DUI), I.C. §§ 18–8004(1), –8005(5). The Court of Appeals vacated the judgment of conviction and remanded for a new trial after concluding that the district court had abused its discretion by excluding a defense witness from testifying. The exclusion was the sanction imposed against the defense for failing to timely disclose a witness. This matter is before the Court on the State's petition for review.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The background and prior proceedings were summarized in the Court of Appeals' decision as follows:

In the early evening hours of April 17, 1996, Coeur d'Alene Police Officer Paul Burke observed Thomas Michael Miller's van make a wide left-hand turn from Gibb's Tavern parking lot onto Emma Avenue in Coeur d'Alene. As the van turned onto Emma Avenue, it accelerated and the tires kicked gravel and debris up from the extreme right-hand side of the road. After confirming with radar that the van was traveling at a rate of 40 mph in a 25 mph zone, Officer Burke activated his overhead lights and the driver of the van pulled over.

Officer Burke asked Miller for his driver's license, registration and proof of insurance. Officer Burke testified that in speaking with Miller, he observed that Miller's eyes were glassy, droopy and bloodshot, and that Miller's speech was slurred. These observations led the officer to believe that Miller was under the influence of alcohol and/or drugs. This belief was bolstered by Miller's admission that he had consumed a beer. Officer

Burke proceeded to administer a number of field sobriety tests. Miller was unable to successfully complete the tests and refused to submit to evidentiary testing to determine his blood alcohol content. Officer Burke then arrested Miller for driving under the influence of alcohol (DUI), I.C. § 18–8004, as well as driving without privileges. The case was eventually bound over to the district court and an information filed charging Miller only with felony DUI. Miller pled not guilty and the case was set for jury trial to commence on December 20, 1996. Following voir dire and jury selection, the prosecutor informed the court that Officer Burke, the state's key witness, would be unable to be at the trial due to an illness. The prosecutor requested a continuance and defense counsel objected, arguing that the defense was ready to proceed, the jury had been selected, and witnesses were present and ready to testify. The court granted the continuance, noting that the speedy trial time had yet to expire and that the resulting inconvenience did not rise to the level of prejudice sufficient to deny Miller due process. The jury panel was excused prior to being formally sworn to try the case and the trial rescheduled for January 16, 1997.

On January 16, a new jury was selected and trial was held. Both Officer Burke, the arresting officer, and Officer Demetre, his backup, testified at the trial. After the state rested, the jury heard testimony from Brian Casey, a patron at the tavern, and Mary Graddy, the bartender. Mr. Casey testified that he saw Miller the evening of his arrest and that in his opinion, Miller was not under the influence when he left the bar. Ms. Graddy testified that she served Miller only two and one-half beers the evening of his arrest.

As a final witness, the defense attempted to call Mark Durant, an investigator with the public defender's office. The prosecutor objected on the ground that the witness had "not been revealed in any discovery. We have had no indication that this individual was going to be called." Defense counsel informed the court that a supplemental discovery response was filed

on January 10, 1997, listing Durant as a witness. The prosecutor asserted that he had not received the supplemental discovery and objected to the witness testifying due to lack of notice. The prosecutor stated: "And even if he did file it, the State didn't receive it. Now he wants to call a surprise witness, that's exactly what the rules are about." The court noted that Miller's supplemental discovery response had *in fact* been filed with the court on January 10, 1997, together with a certification of service indicating that a copy of the response was also placed in the interoffice mailbox of the Kootenai County prosecutor on the same date. Because it appeared that the prosecutor had received a copy of the supplemental response listing Durant as a witness, the court permitted him to testify. However, once it became apparent that Durant would be giving testimony as an "expert," the court sustained the prosecution's objection to any further testimony by the witness.

Thereafter, the defense rested and the jury returned a verdict finding Miller guilty. On April 18, 1997, Miller was sentenced to serve a unified five-year sentence, with one year fixed, and the court retained jurisdiction.[1]

Miller appealed. The case was initially heard by the Court of Appeals which concluded that the district court had abused its discretion in excluding Durant's testimony. The Court of Appeals vacated the conviction and remanded the case for a new trial. *Id.*

The State filed a timely petition for review which was granted by this Court.

## II.

### STANDARD OF REVIEW

■ This Court reviews the district court's refusal to allow Durant to testify due to a discovery violation under an abuse of discretion standard. *State v. Lamphere,* 130 Idaho 630, 633, 945 P.2d 1, 4 (1997) (citing *State v. Stradley,* 127 Idaho 203, 208, 899

P.2d 416, 421 (1995)). This Court reviews an exercise of discretion by conducting a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistent with any legal standards applicable to the specific choice before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ "When considering a case on review from the Court of Appeals, this Court gives serious consideration to the Court of Appeals; however, this Court reviews the trial decision directly. This Court is not merely reviewing the correctness of the Court of Appeals' decision; rather, this Court is hearing the matter as if the case were on direct appeal from the district judge's decision." *Northland Ins. Co. v. Boise's Best Autos & Repairs,* 131 Idaho 432, 433, 958 P.2d 589, 590 (1998) (citations omitted).

## III.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING THE DEFENSE WITNESS.

Idaho Criminal Rule 16 requires the defendant, upon written request by the prosecuting attorney, to furnish the State a list of names and addresses of witnesses the defendant intends to call at trial. I.C.R. 16(c)(3). A written response to a discovery request must be served within fourteen days of service of the request. I.C.R. 16(e). There is a continuing duty to disclose; the subsequent discovery of additional evidence or witnesses prior to or during trial is subject to automatic discovery under the original discovery request. I.C.R. 16(I). The failure to comply with a discovery request is grounds for the imposition of sanctions by the court. I.C.R. 16(e)(2).

*State v. Lamphere,* 130 Idaho 630, 945 P.2d 1 (1997), which was decided after the trial in this case, addresses the issue presented in

---

1. Miller subsequently completed his rider and    was placed on probation.

this appeal. In *Lamphere*, this Court reviewed the district court's exclusion of a defense witness who was not disclosed to the prosecutor until five days before trial. *Id.* at 632, 945 P.2d at 3. The State objected to the witness testifying because of late disclosure but did not show how it had been prejudiced. *Id.* at 633, 945 P.2d at 4. The district court did not require the State to make a showing that it would have been prejudiced if the defense witness had testified, nor did the court weigh the prejudice to the State against the defendant's right to a fair trial before concluding that exclusion was the proper remedy. *Id.* at 634, 945 P.2d at 5. Because no balancing of interests took place, this Court concluded that the district court abused its discretion in excluding the defense witness. *Id.* The Court reiterated the *Lamphere* standard in *State v. Harris*, 132 Idaho 843, 979 P.2d 1201 (1999), determining that "the trial court did not weigh any prejudice that might be suffered by the State against Harris' right to a fair trial."

■ In the present case the district court satisfied the standard articulated in *Lamphere* and thus, did not abuse its discretion. The district court stated the following when it sustained the State's motion to exclude Durant's testimony:

> Frankly, I can see where it would be advantageous to the defense to have that testimony. But on the other side of the coin, fair is fair. I just don't think you can spring an expert with that sort of testimony. On the other side, I don't care whose side it is, without giving the chance to at least meet it. And they're not given that chance. Sustained.

This statement and the initial ruling of the district court indicate that it believed initially that the witness should be allowed to testify despite the late disclosure. It was only when it became apparent that Durant was going to testify as an expert that Durant was excluded. After the district judge considered the defense's right to a fair trial and weighed the prejudice to the State, he decided to exclude the witness' testimony on the basis that the State had not prepared to meet undisclosed expert testimony.

## IV.

## THE DISTRICT COURT DID NOT ERR IN GRANTING THE STATE'S MOTION FOR A CONTINUANCE DUE TO THE ILLNESS OF ITS WITNESS, OFFICER BURKE.

■ Following jury selection on the first trial date, the State moved for a continuance based upon the fact that its key witness was ill. The district court granted the continuance over Miller's objection. The decision to grant or deny a continuance lies within the sound discretion of the district court. *State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995). Miller has the burden of showing that the district court abused its discretion by granting the continuance of the trial. *See State v. Row*, 131 Idaho 303, 311, 955 P.2d 1082, 1090 (1998).

Miller argues that the district court abused its discretion in granting a continuance because it did not consider the prejudice that Miller would suffer, such as the psychological toll that would be placed on him by being prepared to go to trial and then having to wait a month.

The record indicates that the district court did not abuse its discretion in granting the continuance. The following is the district court's response to Miller's objection to the State's motion for a continuance because of the ill-health of its primary witness:

> I think everybody was prepared and ready to go to trial. In fact I think Mr. Baughman [the prosecutor] was prepared until he found out that his officer, and his primar[y] witness, was obviously not able to be here. That certainly seems to me like that constitutes good cause for a continuance if the primary witness for the State is ill.
>
> As everybody is aware and has been pretty well thrashed around here for the last week, the whole purpose here is to give each side a fair shake. And I don't think that it would be really fair to the State.
>
> I note that the speedy trial time in this case doesn't expire until March, so we're well within any constitutional limits. I

recognize that there is a certain amount of inconvenience that's been visited upon the defendant, the defense witnesses. From what I've heard in the preliminaries here, the witnesses basically would be local witnesses, not somebody who is coming in from Seattle or Chicago or somewhere, and I don't know that they're even here yet.

It would seem to me that while there is a degree of inconvenience, there's also a degree of inconvenience to [the] jurors, to the Court, since I[am] prepared to go to the trial and all that sort of thing. But unless the inconvenience rises to the level of being prejudicial and would deprive somebody of a fair trial, I don't think that in and of itself, whether it be the State or the defense. Turn the coin over on the other side, if it were the defense in the position of saying I can't go to trial because I have a critical witness that is throwing up constantly, it would be the same sort of situation, I'd have to weigh the prejudicial effect to either side. Of course the defendant maybe has a little more of that going for him.

But I can't really see here that there is anything that would be so prejudicial to anyone involved that we should not grant the motion to continue the case.

The district court recognized that it had the discretion to grant or deny the continuance. The district court weighed the prejudice to Miller, the inconvenience to Miller and his witnesses and to the court against what the district court considered good cause for the continuance—the illness of the State's primary witness. The weighing process reflects the fact that the district court perceived the issue as one of discretion and the record demonstrates that it acted within the boundaries of that discretion. *See State v. Ransom*, 124 Idaho 703, 707, 864 P.2d 149, 153 (1993) (proper role of trial court in evaluating motion of continuance necessitates weighing competing interests of the State and defendant). The district court arrived at its decision by an exercise of reason. It considered Miller's speedy trial rights, the fact that although the defense witnesses were prepared to go to trial, the witnesses were local, the effect of continuing the case on its own calendar, and the fact that no real prejudice would result. With respect to Miller's argument that the district court did not consider his anxiety of having to wait another month, the district court specifically took into account Miller's "inconvenience." The district court did not abuse its discretion in granting the continuance.

## V.

## CONCLUSION

The judgment of the district court is affirmed.

Chief Justice TROUT and Justices SILAK, and WALTERS, concur.

Justice KIDWELL, dissenting in part III.

Whether the trial court abused its legal discretion in this situation is arguable. However, after a review of the facts and applicable case law, I am persuaded that the benefit of the doubt must be given to the defendant. A fair trial is the necessary end result. To exclude a defense witness in a criminal case is an extreme measure that should only be used after a careful weighing of the potential prejudice to the litigants. The weighing analysis here was insufficient. Therefore, I respectfully dissent from the majority view. I believe the Court of Appeals correctly analyzed the criteria to be utilized for sanctions, particularly when excluding a defense witness in a criminal case.

Although defense witness Durant was undisclosed until six days before trial, the record shows that "as soon as the decision was made to call Durant as a witness, defense counsel filed an immediate supplemental response notifying the prosecutor that Durant would testify." This would seem to comply with the defense's duty under I.C.R. 16(i) to "promptly notify" the State of a new witness.

Assuming that disclosure of Durant six days before trial was actually a discovery violation, the trial court abused its discretion

in excluding his testimony. When Durant attempted to testify, the State asserted that he was a surprise witness, even though it is undisputed that he had been revealed as a witness six days before trial. The State then contended that it was prejudiced because Officer Burke, the State's witness who would have been able to rebut the testimony, had left the jurisdiction due to the defense agreeing to his departure. Thus, the State's showing of prejudice was based upon (1) the false assertion that Durant had not been revealed as a witness, and (2) the prosecution's own action in releasing its witness, to which the defense acquiesced. As the Court of Appeals noted, "The prosecution's failure to review its own file prior to trial should not factor into its claim of prejudice to deny the testimony of a late-disclosed witness." Moreover, it was not the defense's responsibility to remind the State that Officer Burke could be useful in rebutting defense witnesses. Therefore, the record shows no "prejudice" to the State that resulted from the defense's action.

In *State v. Harris*, 132 Idaho 843, 979 P.2d 1201 (1999), the trial court refused to allow a defense witness to testify when the defense had *never* disclosed the witness. *Id.* at 845, 979 P.2d at 1203. This Court found an abuse of discretion because the trial court did not evaluate the prejudice to the State against Harris's right to a fair trial. *Id.* at 847, 979 P.2d at 1205. Likewise, in *State v. Lamphere*, 130 Idaho 630, 945 P.2d 1 (1997), the trial court refused to allow a defense witness to testify who was disclosed to the State five days before trial, concluding that the disclosure was too late. *Id.* at 631, 945 P.2d at 2. This Court held that the trial court exceeded the bounds of its discretion in not allowing the witness to testify, because "the State did not show any prejudice, but simply stated an objection to the witness on the basis of late disclosure." *Id.* at 633, 945 P.2d at 4. In the instant case, although the State asserted prejudice, *it failed to show any prejudice based on the disclosure of the witness six days before trial.* Instead, its showing was based on the erroneous proposition that Durant had been sprung on the State after the State rested its case. Because the trial court

based its decision on an erroneous showing of prejudice, no weighing on the merits took place. Therefore, in my opinion, the trial court abused its discretion in not allowing Durant to testify.