119 P.3d 653

STATE of Idaho, Plaintiff–Respondent,

v.

Maria E. VONDENKAMP,
Defendant–Appellant.

No. 30155.

Court of Appeals of Idaho.

Aug. 2, 2005.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHWARTZMAN, Judge Pro Tem.

Maria E. Vondenkamp ("Maria") appeals from the judgment of conviction entered upon her conviction for grand theft. Maria was convicted of stealing from her elderly stepmother-in-law, Eleanor Vondenkamp ("Eleanor"). Maria claims several trial errors. She asserts that the district court erred by finding Eleanor competent to testify and admitting into evidence a videotaped deposition of Eleanor. Maria also claims that the district court erred by allowing two prosecution witnesses to testify as experts. Finally, Maria argues that Idaho's sentencing scheme is unconstitutional and that her unified sentence of ten years, with two years determinate, is excessive. We affirm.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

Maria was charged with grand theft by unauthorized control, in violation of Idaho Code §§ 18–2403(3), 18–2407(1)(b). It was alleged that between January 2000 and January 2001, Maria knowingly made an unauthorized transfer and/or exercised unauthorized control over cash of a value in excess of $1,000, with the intent to appropriate to herself or a third person the property of Eleanor.

Prior to trial, the prosecution moved, pursuant to Idaho Criminal Rule 15, for leave to depose Eleanor out of concern for her failing health. The district court granted the motion but allowed Maria to reserve the right to challenge Eleanor's competence to testify. The deposition took place on April 29, 2002. Maria's counsel was present at the deposition and afforded the opportunity to cross-examine the witness. Eleanor died on November 26, 2002, at age ninety-six, prior to trial. After a number of evidentiary hearings, the district court ruled that Eleanor was competent to testify on the date her video deposition was taken and that it would be admissible.

At trial, the following evidence was adduced. Eleanor married George Vondenkamp in 1967. George had three children from a previous marriage, one of whom was Roy. During the events in question, Roy Vondenkamp was married to the defendant Maria.

In 1986, Eleanor had a stroke. As a result, she was paralyzed on her right side and had speech problems. Over the years, Eleanor's hearing worsened and she became wheelchair bound and totally dependant on others to care for her. George was her primary care provider and handled all the couple's finances. George and Eleanor lived at their Boise home throughout their marriage while Roy and Maria lived at a different address in Boise. On May 26, 2000, Eleanor signed a power of attorney appointing Roy and Maria as her attorneys-in-fact. George died two days later on May 28. George's will left all his property to Eleanor.

George and Eleanor had a checking and savings account at Home Federal Savings and Loan. Through the testimony of the records custodian of the institution, it was estab-

lished that Roy and Maria's names were added to the checking account in 1998. Roy and Maria were never added to the savings account and they had no authorization to administer that account. On December 27, 1999, five months before George's death, the mailing addresses on both accounts were changed from Eleanor and George's address to Maria and Roy's address. Thereafter, all bank statements were sent to Maria and Roy's home. In a one-week period in June 2000, $97,000 was transferred from the savings to the checking account through three telephone transfers. This could be done by information included in the bank statements. As of January 2000, the balance in the savings account was $106,000; after the last telephone transfer the balance was $62.51. By the end of June 2000, the balance in the checking account was approximately $35.

George and Eleanor also had one checking and three money market accounts with First Security Bank. The institution's records custodian knew Maria personally and took the request from her to process activity on George and Eleanor's accounts. Maria's name was added to the checking account in 1999. Maria had no access to the three money market accounts even though all three accounts were "payable on death" to Maria. Sometime between April 7, 2000, and May 8, 2000, the mailing address for all the accounts was changed to that of Maria and Roy and, thereafter, all bank statements were sent to Maria and Roy's home. At some point, Maria presented the bank with Eleanor's signed power of attorney. In February 2000, the total monies in the accounts exceeded $240,000. By August 2000, that total had dwindled down to approximately $2,000. No evidence was presented that anyone other than Maria made withdrawals and/or transfers from George and Eleanor's accounts at either institution.

Through the testimony of a records custodian, Maria and Roy's personal bank records were admitted into evidence. In May and June 2000, deposits to the accounts exceeded $200,000. Some were cash deposits, others were deposits by checks, signed by Maria, written on Eleanor and George's checking accounts. For example, deposits were made by checks written by Maria to herself for $50,000, to cash for $50,000, to her husband Roy for $6,000, to herself for $6,000, and again to Roy for $7,000.

In August of 2000, attorney Steven Brown was appointed Eleanor's guardian ad litem, Rodet Schreiber was appointed her conservator and Debbie Hansen was appointed guardian. Attorney Brown testified to primarily legal issues. Over objection he testified that an appointed attorney-in-fact owes a fiduciary duty to and must act under the direction and in the interest of the principal and that the attorney-in-fact does not have the unilateral authority to make gifts. Brown also testified that where a joint signer of a checking account is concerned, the money still belongs to the person who initially put it in the bank. Brown further testified that George's will left all the community property to Eleanor and that one spouse cannot unilaterally gift away the other spouse's interest in community property.

Conservator Schreiber testified that at the start of 2000, George and Eleanor's bank balances totaled $378,000. When Schreiber took over the conservatorship in August 2000, the balance in the accounts was $168. Schreiber then began an investigation of questionable checks that Maria had written on George and Eleanor's First Security and Home Federal checking accounts between March and June of 2000. Over objection, the district court, after deeming Schreiber an "expert" witness, allowed her to state conclusions regarding whether certain checks were written for Eleanor's benefit.

Guardian Hansen testified that after her appointment she determined Eleanor was not receiving proper care. Hansen immediately went to get clothes and food, and to obtain proper medical attention for Eleanor. Eleanor was incapacitated in that she could not physically care for herself and was vulnerable. In November of 2000, Eleanor had to sell her house and move to a licensed family care home because she was running out of money.

Maria took the stand in her defense. She testified, generally, that George and Eleanor added her name as a signatory to the checking accounts because they felt "that if I

needed to sign into that account to pay bills or do whatever that they wanted it." Maria testified that she wrote a June 16, 2000, check in the amount of $16,456.81 paying off her and Roy's consolidation loan because George had previously insisted that she do so. According to Maria, George had also given her permission to write a check for new siding for her and Roy's home. Maria further testified George gave a gift of $50,000 to Roy before he died. With regard to the power of attorney granted by Eleanor, Maria testified, "as [Eleanor] stated in her deposition, she gave me permission to use the accounts, cash, checks, whatever."

On cross-examination, Maria admitted that there was over $200,000 in George's estate at his death, that George's will left everything to Eleanor, and that Eleanor did not know the amount of money in her accounts because George did not want her to. Maria and Roy went with Eleanor to obtain the power of attorney on May 26, 2000. Thereafter, Maria acknowledged that she used it to do essentially the same thing she was doing before; i.e., to access George and Eleanor's funds in her discretion.

The jury returned a guilty verdict. This appeal followed.

## II.

### ANALYSIS

#### A. Competence of Eleanor Vondenkamp

■ Maria first contends that the district court erred in finding Eleanor competent to testify on the day of her deposition and, therefore, in admitting her videotaped deposition into evidence at trial. We disagree.

■ As relevant to this case, I.R.E. 601 provides:

Every person is competent to be a witness except:

(a) Incompetency Determined by the Court. Persons whom the court finds to be incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly.

The Idaho Supreme Court has held that "[t]his rule contemplates that the trial court has the discretion to determine witness competency." *State v. Ransom*, 124 Idaho 703, 710, 864 P.2d 149, 156 (1993), *citing State v. Mader*, 113 Idaho 409, 410, 744 P.2d 137, 138 (Ct.App.1987). When an exercise of discretion is reviewed on appeal, the inquiry involves (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Ransom*, 124 Idaho at 706, 864 P.2d at 152.

The trend of the law, as currently embodied in I.R.E. 601, favors general competency. *State v. Poole*, 124 Idaho 346, 348, 859 P.2d 944, 946 (1993), *citing State v. Iwakiri*, 106 Idaho 618, 622, 682 P.2d 571, 575 (1984). The commentary to Federal Rule of Evidence 601 [1] states: "Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence." *See also Iwakiri*, 106 Idaho at 622, 682 P.2d at 575. This rule creates a presumption that all witnesses are deemed competent to testify. *See United States v. Skorniak*, 59 F.3d 750, 755 (8th Cir.1995); *United States v. Lightly*, 677 F.2d 1027, 1028 (4th Cir.1982) (both applying Federal Rule of Evidence 601.)

In determining Eleanor's competency, the district court considered the testimony of Debbie Hansen, Eleanor's guardian for a two and one-half year period, and Dr. Gabica, Eleanor's treating physician of twelve years, as well as the videotape of Eleanor's deposition. While Dr. Gabica testified that Eleanor had, in the past, suffered from memory loss on certain days caused by vascular disease, he further testified that memory is not the same as competency in that "just because you don't remember something doesn't mean you don't understand it." He further testified that he reviewed the videotaped deposi-

1. In relevant part, Federal Rule of Evidence 601 provides:

Every person is competent to be a witness except as otherwise provided in these rules.

tion and "after the questions got into a rhythm, it appeared that [Eleanor] read them and answered them with some authority." Dr. Gabica concluded, however, that he could not give an opinion on Eleanor's competency on the date of her deposition because of the lack of running questions concerning judgment issues.

Debbie Hansen testified that Eleanor was incapacitated in that she could not easily communicate because of her stroke and loss of hearing. Nonetheless, Ms. Hansen developed a communication process with Eleanor using paper and/or a wet/dry board along with rudimentary hand gestures. In the month before her deposition, Eleanor's health worsened in that she developed pneumonia and had trouble eating and drinking. Eleanor's ability to communicate with Hansen, and Eleanor's ability to make decisions, lasted until Eleanor's last stroke on August 17, 2002. Eleanor made medical treatment choices in the month preceding her April 2002 deposition and thereafter in May and June.

The videotape shows that Eleanor initially had difficulty understanding the procedure of the deposition. Some of this difficulty may be attributed to the fact that the parties apparently did not realize the extent of her hearing impairment. After a procedure was established, the questions and answers flowed more smoothly. However, the videotape also reveals that Eleanor gave inconsistent answers on some subjects.

The district court found that while Eleanor had days that were up and days that were down, she could make medical decisions and remember events until her final stroke in August of 2002. The district court held that although Eleanor was incapacitated in that she had diminished physical ability, problems with hearing and problems with communicating, this did not render her incompetent. The district court further found that Eleanor's videotape responses "were appropriate after a basic guideline was established and she began to understand it."

On appeal, Maria does not take issue with any of the district court's factual findings. Instead, she asserts that the videotape is the only relevant evidence on the issue of Elea-nor's competence and further urges this Court to make a *de novo* determination of competency on appeal based solely on the videotape. This we decline to do. Clearly, the testimony of Hansen and Gabica was relevant to the issue of Eleanor's competence to testify. Moreover, the Idaho Supreme Court has expressly held that a competency determination is within the discretion of the trial court. *Ransom,* 124 Idaho at 710, 864 P.2d at 156.

We find no abuse of discretion in the district court's ruling that Eleanor was competent to testify on the day of her deposition. To the extent that Eleanor's deposition responses were inconsistent, or even wrong, this goes more to the weight and credibility of her testimony than to its admissibility. Here, the district court correctly instructed the jury that "[a]s the sole judges of the facts, you must determine what evidence you believe and what weight you attach to it." A jury is well suited to make this type of determination.

**B. Expert Testimony of Steven Brown**

Maria next asserts that the district court erred by allowing expert testimony from attorney Brown. Maria does not contend that she did not know Brown was going to testify or that he was a lawyer and Eleanor's guardian ad litem. Instead, Maria contends that the prosecution failed to formally disclose Brown as an expert witness prior to trial and, therefore, his testimony should have been excluded as a discovery sanction. Maria also argues that Brown's testimony was inadmissible under I.R.E. 702 because it consisted of legal opinions. For the following reasons, we find no error.

First, Maria's discovery sanction argument incorrectly assumes that Idaho's criminal discovery rules require the prosecution to expressly identify witnesses as experts. While pretrial criminal discovery has the effect of expediting trials and diminishing opportunities for surprise, *see generally State v. Thompson,* 119 Idaho 67, 803 P.2d 973 (1989), criminal discovery rules and statutes vary widely by jurisdiction. *See generally* WAYNE R. LAFAVE, CRIMINAL PROCEDURE

884

§ 20.2(b), p. 830–33 (2d ed.1999). In Idaho, witness disclosure required of the prosecution is set forth in I.C.R. 16(b)(6), which provides:

> State Witnesses. Upon written request of the defendant the prosecuting attorney shall furnish to the defendant a written list of the names and addresses of all persons having knowledge of relevant facts who may be called by the state as witnesses at the trial, together with any record of prior felony convictions of any such person which is within the knowledge of the prosecuting attorney. The prosecuting attorney shall also furnish upon written request the statements made by the prosecution witnesses or prospective prosecution witnesses to the prosecuting attorney or the prosecuting attorney's agents or to any official involved in the investigatory process of the case unless a protective order is issued as provided in Rule 16(k).

The first sentence of I.C.R. 16(b)(6) contains no *express* requirement that the prosecuting attorney identify a person on the written list as an expert.[2] In *State v. Miller*, 133 Idaho 454, 456–57, 988 P.2d 680, 682–83 (1999), the Idaho Supreme Court upheld the district court's sanction of exclusion of a defense witness where the witness was disclosed, but not identified as an expert. However, it appears that the only issue raised on appeal was the appropriateness of the sanction imposed, i.e., exclusion of the witness, rather than whether, under the rules, the witness had to be expressly disclosed as an expert in the first instance.

It may be, however, that a prosecution witness will be effectively revealed as an expert under the second sentence of I.C.R. 16(b)(6) requiring the prosecuting attorney to "furnish upon written request the statements made by the prosecution witnesses or prospective prosecution witnesses to the prosecuting attorney or the prosecuting attorney's agents or to any official involved in the investigatory process of the case...." *See generally State v. Araiza*, 124 Idaho 82, 92–93, 856 P.2d 872, 882–83 (1993); *State v. Marek*, 112

Idaho 860, 867–68, 736 P.2d 1314, 1321–22 (1987); *State v. Avelar*, 124 Idaho 317, 322, 859 P.2d 353, 358 (Ct.App.1993). In addition, Idaho Criminal Rule 18 allows for a pretrial conference "to consider such matters as would promote a fair and expeditious trial." Thus the parties may agree to the disclosure of witnesses as experts and/or the nature of their expert testimony. Moreover, parties to a criminal prosecution must disclose, under certain circumstances, results or reports of physical or mental examinations, or scientific tests or experiments. *See* I.C.R. 16(b)(5) and 16(c)(2); *see also State v. Rhoades*, 121 Idaho 63, 76–77, 822 P.2d 960, 973–74 (1991).

■ Under Idaho law, a trial court may impose sanctions for discovery violations, including, in appropriate circumstances, the severe sanction of exclusion of a witness. I.C.R. 16(e)(2); 16(j); *Miller*, 133 Idaho at 456–57, 988 P.2d at 682–83; *State v. Harris*, 132 Idaho 843, 846–47, 979 P.2d 1201, 1204–05 (1999); *State v. Lamphere*, 130 Idaho 630, 633–34, 945 P.2d 1, 4–5 (1997); *State v. Stradley*, 127 Idaho 203, 206, 899 P.2d 416, 419 (1995); *State v. Albert*, 138 Idaho 284, 287–89, 62 P.3d 208, 211–13 (Ct.App.2002); *State v. Winson*, 129 Idaho 298, 302–03, 923 P.2d 1005, 1009–10 (Ct.App.1996). Here, however, while defense counsel complained generally about the lack of knowledge of the specific content of Brown's testimony, no discovery sanction was ever requested. This Court will not review a trial court's alleged error on appeal absent an adverse ruling which forms the basis for the assignment of error. *State v. Fisher*, 123 Idaho 481, 485, 849 P.2d 942, 946 (1993).

■ Maria also asserts that the district court erred by allowing Brown to testify to opinions concerning ownership of funds in joint bank accounts and duties owed under a power of attorney. She argues that Brown's testimony consisted of inadmissible legal opinions and that the law on these matters should have been submitted to the jury through instructions.

2. A similar rule applies to discovery responses from a criminal defendant. Pursuant to I.C.R. 16(c)(3): "Upon written request of the prosecuting attorney, the defendant shall furnish the state a list of names and addresses of witnesses the defendant intends to call at trial." Again, there is no express requirement that the defendant identify a witness as an expert.

At trial, the prosecutor presented an offer of proof outlining Brown's testimony on ownership of joint bank accounts, fiduciary duties owed under a power of attorney and the circumstances surrounding Eleanor's execution of a will, including the issue of undue influence. With regard to Brown's proposed testimony, defense counsel objected as follows:

Judge, I don't object to Mr. Brown testifying I guess generally concerning his activities with the decedent here.

. . . .

The problem I have is if he testifies about his opinion reference undue influence. I don't think that's a proper subject for him to opine before this jury.

And then in terms of his testimony concerning the fiduciary duties that were created by the durable power of attorney, I suppose if it is limited to what the document itself, which the court has basically already let the one witness read as a business record of the bank, at least the date of it, which I disagree with your ruling.

But be that as it may, I don't think he can opine as to duties created by that document, other than to give his own opinion, which is really irrelevant to this jury.

The district court excluded only Brown's testimony regarding Eleanor's will based upon defense counsel's objections.[3]

■ It is a fundamental tenet of appellate law that a proper and timely objection must be made in the trial court before an issue is preserved for appeal. *State v. Carlson*, 134 Idaho 389, 398, 3 P.3d 67, 76 (Ct. App.2000). Under Idaho Rule of Evidence 103(a)(1), a party opposing proffered evidence must make a timely objection stating the specific ground of objection unless the specific ground is apparent from the context. An objection on one ground will not preserve a separate and different basis for excluding the evidence. *State v. Norton*, 134 Idaho 875, 880, 11 P.3d 494, 499 (Ct.App.2000); *State v. Enyeart*, 123 Idaho 452, 454, 849 P.2d 125, 127 (Ct.App.1993).

■ Here, defense counsel's stated objection was relevance. Defense counsel did not object on the ground of improper expert opinion testimony under I.R.E. 702. The reason for the requirement of a specific objection is to alert the trial court and the other party to the grounds of the objection so that it may be addressed or cured. *United States v. Walters*, 904 F.2d 765, 769 (1st Cir.1990). The district court was given no opportunity to address the application of I.R.E. 702 with regard to the admissibility of legal opinions because it was not asked to do so. On the issue of duties owed under a power of attorney, Maria has therefore failed to preserve any I.R.E. 702 objection for appeal.

■ With regard to Brown's opinion testimony concerning funds in joint bank accounts, the record shows that defense counsel failed to object to this testimony on any basis. This Court will not review a trial court's alleged error on appeal absent an adverse ruling which forms the basis for the assignment of error. *Fisher*, 123 Idaho at 485, 849 P.2d at 946. While Maria contends that the above matters should not have been the subject of expert testimony, but should have been submitted to the jury through instructions, the record shows no jury instruction request was made at the trial level.

## C. Testimony of Rodet Schreiber

■ Maria next asserts that the district court erred by allowing "expert" testimony from Rodet Schreiber, Eleanor's conservator. During Schreiber's testimony an issue arose over the admissibility of four charts prepared by the prosecution as summaries of bank records already in evidence. Defense counsel argued that the charts were irrelevant and cumulative to evidence already admitted. The district court stated, *sua sponte*, that Schreiber "is qualified as an expert as being a conservator appointed on many occasions over the years to represent the interests of individuals who cannot handle their own as-

---

**3.** We note that Brown's testimony was more akin to a general overview and/or explanation of the areas of fiduciary responsibilities owed under a power of attorney, ownership of funds in joint bank accounts and ownership of community property than it was a legal opinion on discrete questions of law or ultimate issues before the jury.

sets for various reasons." The court also indicated that it would do additional research that evening. The following morning, the district court ruled that the charts were admissible, stating:

In this court's opinion, the testimony of the conservator as to her findings and her suspicions as to whether financial issues existed in the estate based upon a review of the protected persons financial records is no different than a medical doctor in a malpractice case reviewing another doctor's records and drawing a conclusion from that review as to whether proper procedures were followed.

. . . .

Based upon this review, the court revisited the earlier evidentiary ruling as to State's Exhibits 12A, 13, 14 and 15. The court finds, one, that the conservator had been qualified as an expert and is therefore qualified to testify as to her review of the protected person's accounts and issues which she identified as being of concern to her relating to the handling of the protected person's assets prior to her becoming the conservator of the protected person.

Two, she may testify as to her investigation of these facts and her findings, which resulted from that investigation.

Three, she may testify as to specific items which she identified as needing to be investigated and what her investigation found.

Defense counsel objected, stating:

But the way I understand your ruling now is that this Mrs. Schreiber is an expert, which I don't believe is—I guess my position is and this is my objection.... [T]he issue in this case does not require the assistance of an expert. What she is doing in this case is purely ministerial. She has basically compiled a bunch of documents and she has put them in a form that they can present.

It certainly wouldn't be proper for her to offer any opinions in this case about, what, that the defendant didn't have permission to use these? Obviously, that is a fact question that she could never know or at least would not ever be proper in a court of law because she wasn't a party to those

proceedings. She is not involved until August, three months after this stuff happens. And so I think the court's analysis that this is somehow a summary and that her expert testimony somehow requires this is erroneous.

Schreiber's ensuing testimony can be summarized as follows. After she was appointed Eleanor's conservator, she conducted an investigation of checks Maria had written on Eleanor's accounts. Schreiber identified checks that she thought were of concern. She then called the payees and discussed whether Eleanor had an account or bill with the entity. The district court sustained defense counsel's hearsay objections to the content of the conversations, but allowed Schreiber to repeatedly testify to her conclusion that particular checks were not written for the benefit of Eleanor.

Maria contends that the district court erred by qualifying Schreiber as an expert. With this contention, we agree. Defense counsel's objection that Schreiber's conduct was ministerial and that expert testimony was improper in this circumstance is sufficiently particular to constitute an I.R.E. 702 objection to Schreiber's testimony. Idaho Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *State v. Hester,* 114 Idaho 688, 760 P.2d 27 (1988), the Idaho Supreme Court addressed the I.R.E. 702 standards for admission of expert testimony. The Court held if the subject of the testimony is "beyond common experience," expert testimony is allowed if it assists the trier of fact. *Id.* at 693, 760 P.2d at 32. The Court further held that "the expert's function is to provide testimony on subjects that are beyond the common sense, experience, and education of the average juror." *Id.* at 694, 760 P.2d at 33; *see also Ransom,* 124 Idaho at 709, 864 P.2d at 155.

It is difficult to characterize the exact nature of Schreiber's testimony as either

opinion or fact. Strictly speaking, the prosecution did not ask her to give opinions. Instead, she was asked, based on her investigation, to state conclusions as to whether a particular check signed by Maria was written for Eleanor's benefit. These conclusions were oft-times based on unrevealed hearsay statements of entities she contacted.

Allowing Schreiber's "expert" testimony was error. The nature of Schreiber's testimony had little to do with her particular expertise as a conservator. We disagree with the district court's statement that the instant case was no different than a case involving expert medical testimony. The latter particularly calls for expert opinion testimony as it often involves matters beyond the average juror's experience. Here, however, the average juror could easily understand that if a particular business entity has no records or account for a particular person, a check written to that entity for a bill due and owing is most likely not for the benefit of that person. Moreover, the function of Schreiber's testimony was to convert inadmissible hearsay declarations of the contacted entities into admissible "opinions" and to render the same conclusion, in part, that the jury was asked to reach, i.e., whether Maria was writing checks on Eleanor's account to pay off Maria's personal debts. This was error. *Hester*, 114 Idaho at 695, 760 P.2d at 34. The fact that the specific content of Schreiber's conversations with the contacted entities was not revealed to the jury does not change the fact that hearsay was elicited through Schreiber's testimony. *See State v. Agundis*, 127 Idaho 587, 596, 903 P.2d 752, 761 (Ct.App.1995) ("Testimony, which conveys the substance of an out-of-court state-

ment for the truth of the matter asserted, is properly characterized as hearsay even though the statement is not directly repeated."); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct.App.1994) ("The hearsay rule not only prohibits repetition of the actual out-of-court statement; it also applies where the witness attempts to convey the substance or purport of the statement."). Absent the proper findings by the trial court, experts cannot be used as a *conduit* for the introduction of inadmissible hearsay by the proponent of the evidence. I.R.E. 703; *State v. Scovell*, 136 Idaho 587, 591–93, 38 P.3d 625, 629–31 (Ct.App.2001).

Accordingly, we hold that the district court erred by qualifying Schreiber to testify as an expert with regard to matters not in need of expert testimony. We also hold that Schreiber's "opinion" testimony did not assist the trier of fact within the meaning of I.R.E. 702.

▮ We must next determine whether that error requires reversal of Maria's conviction. Idaho Criminal Rule 52 directs that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." An error is harmless if a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence. *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998) (quoting *Giles v. State*, 125 Idaho 921, 925, 877 P.2d 365, 369 (1994)); *see also State v. Pecor*, 132 Idaho 359, 363, 972 P.2d 737, 741 (Ct.App.1998).

Schreiber's challenged testimony[4] was only a small part of the entire case against Maria. Moreover, the issue of whether par-

---

4. This testimony involved, generally, checks written by Maria on George and Eleanor's accounts to her own credit card company totaling approximately $5,200, to a doctor's office for $133, to an individual for $500, to a cable television company for $258.07, to a company for $132.31, to a dentist's office for $35, to a jeweler for $1,500 and to another individual for $127. On the other hand, the prosecutor submitted independent and far more substantial evidence through proper means. For example, the prosecutor called the records custodian from GE Capital Finance as a witness. His testimony revealed that Maria wrote a $16,456.81 check to pay off Maria and

Roy's consolidation loan. In addition, through the testimony of bank records custodians, copies of checks written by Maria on George and Eleanor's accounts were admitted into evidence. Between June 1 and June 20, 2000, Maria wrote twelve checks to herself and to her husband Roy in amounts totaling in excess of $107,000. Bank records also showed that Maria made hundreds of thousands of dollars worth of transfers out of George and Eleanor's accounts. In short, when compared to evidence properly admitted, Schreiber's challenged testimony was fairly insignificant.

ticular checks written by Maria were for Eleanor's or Maria's personal benefit was not the primary issue in the case. Maria's defense was that George and/or Eleanor had given her permission to access their funds for her personal benefit and/or that the funds had been gifted to her and Roy. The jury did not believe Maria's claims that George and/or Eleanor had authorized her actions. Given the weight of the independent evidence admitted against Maria, this Court is convinced beyond a reasonable doubt that the jury would have reached the same result without the admission of Schreiber's challenged testimony. *Moore*, 131 Idaho at 821, 965 P.2d at 181. The error of the district court in admitting the testimony was, therefore, harmless.

### D. Constitutionality of Idaho's Sentencing Scheme

■ Maria argues on appeal that the district court infringed her Sixth Amendment right to a jury trial when it imposed a term of imprisonment by relying on facts not found by a jury. In support of her position, Maria argues that I.C. § 19–2521 requires that the district court impose a sentence without a term of imprisonment, i.e., probation, unless Maria admitted, or a jury found beyond a reasonable doubt, that a term of imprisonment was necessary for the protection of society. Maria cites to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and its progeny, *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

The Idaho Supreme Court recently addressed this argument in *State v. Stover*, 140 Idaho 927, 104 P.3d 969 (2005). In that case the Court noted that I.C. § 19–2521, which lists criteria for placing a defendant on probation or imposing imprisonment, does not require a district court to make findings of fact. Rather, these guidelines only suggest sentencing criteria for the exercise of the sentencing court's discretion. The Idaho Supreme Court therefore held that Idaho's sentencing scheme does not mandate probation absent a jury finding that probation is inappropriate. Additionally, the Court recognized that Idaho has an indeterminate sentencing system and, thus, based upon the

holding in *Blakely* that indeterminate sentencing does not violate the Sixth Amendment, Idaho's sentencing scheme does not violate the Sixth Amendment right to a jury trial. Based upon the Idaho Supreme Court's decision in *Stover*, we conclude that the district court did not deny Maria her right to a jury trial when it imposed a sentence of imprisonment.

### E. Sentence

■ The district court imposed a unified term of ten years imprisonment with two years determinate, on Maria's conviction for grand theft. Maria contends the sentence is excessive. We disagree.

■ An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

While Maria has no prior criminal record, she stole hundreds of thousands of dollars from her elderly stepmother-in-law, leaving the victim virtually destitute and homeless. Under these circumstances, Maria has not

shown that her sentence represents an abuse of discretion.

## III.

### CONCLUSION

The district court erred in qualifying Schreiber as an expert witness. That error was, however, harmless. The remainder of Maria's claims of error are without merit.

Maria Vondenkamp's judgment of conviction and sentence are affirmed.

Judge PERRY and Judge LANSING concur.